Cecola Jean **MOZON**, Appellant,

v.

**The STATE of Texas.**

No. 380–98.

Court of Criminal Appeals of Texas.

April 28, 1999.

Walter M. Reaves, Jr., West, for appellant.

Dan V. Dent, Dist. Atty., Hillsboro, Matthew Paul, State's Atty., Austin, for State.

## OPINION

HOLLAND, J., delivered the opinion of the Court, in which MEYERS, MANSFIELD, PRICE, WOMACK, and JOHNSON, JJ. joined.

Appellant Cecola Jean Mozon was charged with aggravated assault with a

deadly weapon. TEX. PENAL CODE § 22.02 (1998). The jury convicted appellant of aggravated assault and assessed her punishment at five years imprisonment and recommended community supervision. The Tenth Court of Appeals affirmed in an unpublished opinion. *Mozon v. State*, 10–96–00276–CR (Tex.App.—Waco Dec. 17, 1997).

## I.

The undisputed testimony established that on Monday, Sept. 25, 1995, before leaving for Hillsboro High School, appellant purchased thirty cents worth of gasoline. During her lunch break, appellant went to the school cafeteria and sat down at a table. Rodrick Brown, the victim, sat at the table with appellant. After sitting with Brown while he ate his lunch, appellant threw a cup of gasoline on him, lit a piece of paper with a lighter, and tossed the lit paper on him. Brown was taken to the hospital where he was treated for burns on his face, arm, and upper body.

At trial, appellant testified that she was afraid of Brown because he had repeatedly threatened and harassed her. During the two weeks leading up to the instant offense, she claimed Brown would pull her hair and breast and call her vulgar names. On the Friday night prior to the offense, appellant claimed Brown ordered her to take her "dead shirt off" because it was the color of a rival gang and hit her in the back with rocks. Later that night Brown stated he intended to "beat [appellant's] ass Monday morning" and "beat the baby" out of her.[1] Appellant testified she saw Brown the following day and he again stated he planned to beat "her ass" and "the baby out of her" Monday at school.

Appellant testified she feared Brown and believed he would carry out his threats on Monday. She admitted she did not share her fears with a teacher or a police officer because she believed they would not protect her. Appellant testified she believed she needed to protect herself

and her baby from Brown. She testified that she considered using a gun or knife but decided to set Brown's shirt on fire because she "didn't want to hurt him."

Appellant testified that after purchasing the gasoline on Monday morning, she went back to her house where she poured some of the gas into a spray bottle and placed it in her backpack. She put the remaining gas in a baby cup which she put in her front pocket. She then proceeded to school. Appellant claimed when she saw Brown in the hallway, he told her he was "going to show her how tough he was." At lunch, appellant went to the school cafeteria and took her usual seat. Brown took the seat next to her and stated he was going to "show her how tough [he was] when [he] finished eating." Though Brown normally sat at the same table that she did, appellant explained it was unusual for him to sit next to her.

Appellant admitted she had the opportunity to leave the table but chose not to "because [she was] tired of running" from Brown. Appellant also admitted that during lunch Brown was saying things that made her mad and upset. Appellant testified that as Brown ate his lunch she "got the gas out of [her] pocket," put it "between [her] legs," and started "playing with the lighter." She testified she became more frightened when Bo Posey, Brown's friend, got up from their table and walked to the front of the cafeteria as though he were watching for teachers. Appellant testified that she believed Brown's act of pushing his tray aside meant that he was about to carry out his threats and she had to defend herself. Appellant admitted she threw the cup of gasoline on Brown and lit it with a piece of paper. She denied any intent to hurt Brown and claimed she only wanted to "scare him away."

Outside the presence of the jury, appellant sought to testify as to three prior violent incidents involving Brown which

---

1. Appellant was pregnant throughout these events.

she was aware of at the time of instant offense. Specifically, she wanted to testify that she was aware that Brown had put his cousin's eye out; knocked a girl's tooth out during an argument, and hit another student with a board during a fight at school. She maintained this testimony went to the reasonableness of her belief that Brown's furtive act of pushing the tray aside constituted a threat which she believed he was about to carry out. The State objected to admitting this evidence on several grounds. The State maintained the evidence was inadmissible because the issue of self-defense was not raised. Even if self-defense were raised, the State claimed appellant's testimony was not relevant because she could not testify as to whether Brown committed the acts intentionally. The State also objected on grounds that the evidence was vague and remote because appellant could not testify as to the time the acts allegedly occurred. Finally, the State claimed the evidence was irrelevant because it did not justify the use of deadly force. The trial court ruled the evidence was relevant to appellant's claim of self-defense but determined it inadmissible pursuant to Rule 403 of the Texas Rules of Criminal Evidence.

On appeal, citing *Gonzales v. State*, 838 S.W.2d 848, 862 (Tex.App.Houston [1st] 1992), *pet. dism'd, improvidently granted,* 864 S.W.2d 522 (Tex.Crim.App.1993), appellant claimed the trial court abused its discretion because evidence supporting her claim of self-defense could not be excluded under Rule 403. The Tenth Court of Appeals agreed the evidence of Brown's extraneous acts of violence were relevant to appellant's defensive theory. The court, however, declined to find the trial court abused its discretion in subjecting the evidence to Rule 403 or in determining the evidence's probative value was substantially outweighed by "the dangers mentioned in the rule." *Mozon*, slip op. at 4.

In concluding the trial court's decision to exclude the evidence was not "outside the zone of reasonable disagreement," the Court of Appeals cited the fact that appellant did not know when the extraneous acts occurred and whether they were committed intentionally. *Mozon*, slip op. at 5. Additionally, the court observed the trial judge admitted evidence of Brown's threats of violence toward appellant through her testimony and the testimony of several other witnesses.

The Court noted there was also other evidence of Brown's violent character through the witnesses' testimony that Brown was in the alternative school and did not have a reputation in the community as a peaceful, law-abiding citizen. *Id.*

We granted appellant's petition for discretionary review to determine whether evidence which supports a relevant defensive theory is subject to Rule 403 and, if so, whether the trial court's balancing test determination is to be reviewed by the standard set out in *Montgomery v. State*, 810 S.W.2d 372 (Tex.Crim.App.1991) (op. on reh'g).

## II.

Appellant claims the Tenth Court of Appeals erred in holding her testimony regarding the victim's extraneous acts of violence could be excluded under Rule 403.[2] Appellant contends Rule 403's balancing test does not apply to this evidence be-

**2.** Rule 403 provides:
  Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.
Tex.R.Crim. Evid. 403 (now Tex.R. Evid 403). Effective March 1, 1998, the Texas Rules of Criminal Evidence and Texas Rules of Civil Evidence were merged into the new Texas Rules of Evidence. Rule 403 of the Rules of Evidence is the same as former Rule 403 of the Rules of Criminal Evidence. Thus, the scope and application of the new rule would be the same as under the old one. Because this case was tried before the effective date of the new rules, however, we will apply former Texas Rules of Criminal Evidence.

cause it supports her theory of self-defense, and thus, any prejudice arising from its admission is not "unfair" to the State. Citing the limitations on the admissibility of a victim's character for violence under the common law and now codified in Rule 404(a)(2), appellant claims this evidence is admissible only where the courts have already determined the State suffers no "unfair prejudice." We begin our analysis by addressing appellant's contention that a balancing determination is unnecessary because the common law and Rule 404(a)(2) incorporate Rule 403's concept of prejudice.

The common law on which appellant relies is the *Dempsey* line of cases. In these cases, we held a defendant could admit evidence of the deceased's character for violence if there was some evidence of an act of aggression by the deceased that raised an issue as to whether the defendant justifiably acted in self-defense. *See e.g., Gutierrez v. State,* 764 S.W.2d 796, 798 (Tex.Crim.App.1989); *Thompson v. State,* 659 S.W.2d 649, 653 (Tex.Crim.App. 1983); *Lowe v. State,* 612 S.W.2d 579, 580 (Tex.Crim.App.1981); *Dempsey v. State,* 159 Tex.Crim. 602, 266 S.W.2d 875, 877 (1954). We recognized two theories for admitting evidence of the deceased's character for violence: (1) to show the defendant reasonably believed the force she used was immediately necessary to protect herself from the deceased; and (2) to show the deceased was the first aggressor. *See e.g., Tate v. State,* 981 S.W.2d 189, 192 (Tex.Crim.App.1998) (citing *Gutierrez,* 764 S.W.2d at 798 and *Thompson,* 659 S.W.2d at 653–54). The relevant theory typically turned on whether a defendant's claim of

self-defense rested on a danger that was actual or perceived.

If the defendant's claim rested on a perceived danger, then she could present evidence of the deceased's violent character to show she reasonably believed force was necessary to protect herself from the deceased. *Thompson,* 659 S.W.2d at 653; *Dempsey,* 266 S.W.2d at 877. The evidence was admissible because it showed why the defendant considered the deceased's furtive gesture to be a threat of violence. *Horbach v. State,* 43 Tex. 242, 251 (1875). Because the evidence was intended to show the defendant's state of mind it was relevant only if the defendant was aware of it.

When a defendant's claim, however, was that the deceased was the first aggressor, evidence of the deceased's violent character was relevant to support the inference that the deceased acted in conformity with his character. *Thompson,* 659 S.W.2d at 653–54; *Dempsey,* 266 S.W.2d at 877–78. Because the purpose of the evidence under this theory was to show the deceased acted in conformity with her violent character, not the defendant's state of mind, the evidence was relevant even if the defendant was unaware of the deceased's violent character.

■ The Texas Rules of Criminal Evidence superceded the *Dempsey* line of cases. Under the evidentiary rules evidence of other crimes, wrongs, or acts are inadmissible to prove character conformity. TEX.R.CRIM. EVID. 404(a). As an exception to this general ban on character evidence, however, a defendant may offer evidence of a victim's character or pertinent character trait. TEX.R.CRIM. EVID. 404(a)(2).[3] Consequently, evidence of a

---

3. Rule 404 reads, in pertinent part:

a) **Character Evidence Generally.** Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
  \*   \*   \*   \*   \*   \*
  (2) Character of victim. Subject to Rule 412, evidence of a pertinent trait of char-

acter of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of peaceable character of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

TEX.R.CRIM. EVID. 404(a)(2) (now TEX.R. EVID. 404(a)(2)). Though the unified version of

victim's character for violence remains admissible to show the victim was the first aggressor.

▮ A victim's extraneous acts of violence also remain admissible to show the defendant's state of mind. Tex.R.Crim. Evid. 404(b).[4] Though Rule 404(a) prohibits the use of extraneous acts to prove character conformity, such evidence may be admissible for purposes other than proving character assuming the purpose for which the evidence is proffered is relevant.[5]

▮ In the instant case, appellant wanted to show she reasonably believed she was in danger when the victim pushed his tray aside and the force she used against him was immediately necessary to protect herself. Tex.R.Crim. Evid. 404(b). Because appellant's purpose in offering the victim's extraneous acts of violence was to show her state of mind, the evidence was admissible under Rule 404(b). Appellant claims because "Rule 404 is absolute," the trial judge was prohibited from excluding the evidence under Rule 403. We disagree.

Rule 404 was promulgated as a specific balancing application of Rule 403's more general balancing test due to the inherent prejudice associated with admitting character evidence. Hence, as appellant suggests Rule 404 does incorporate, at least to some extent, Rule 403's concept of prejudice. The plain language of Rule 403,

however, states all "relevant evidence" is subject to its general balancing determination. Tex.R.Crim. Evid. 403. There is no exception for evidence relevant to a defensive theory. Consequently, while evidence may be admissible under Rule 404 the trial court may nevertheless exclude the same evidence if it determines, within its discretion, that the probative value of such evidence is substantially outweighed by its unfair prejudice.[6] Because the State properly made a Rule 403 objection, the trial court was required to balance probativeness and prejudice of the evidence. We hold the Court of Appeals did not err in upholding the trial judge's application of Rule 403.

## III.

▮ In her second ground for review, appellant claims if the trial court's application of Rule 403 was proper, the Tenth Court of Appeals erred in failing to follow the reviewing framework established by this Court in *Montgomery v. State*, 810 S.W.2d 372 (Tex.Crim.App.1991) (op. on reh'g). Appellant also claims "both the trial court and the court of appeals failed to address how the evidence was prejudicial, much less why it was so prejudicial that it had to be excluded." We agree.

▮ A trial judge has broad discretion in admitting or excluding evidence. A trial judge, however, may exercise her dis-

---

Rule 404 contains some new language, no substantive changes were made to Rule 404(a)(2).

**4.** Rule 404(b) enures to the benefit of both the State and the accused. *Tate,* 981 S.W.2d at 193 ("[n]othing in the language of [Rule 404(b)] would lead one to believe that it is a rule intended solely as benefit for the State to be applied against the defendant").

**5.** When a party introduces evidence for a purpose other than character conformity under Rule 404(b) it must be relevant; that is, the other purpose for which the party proffers the evidence must "tend to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the

evidence." *Rankin v. State,* 974 S.W.2d 707, 719–20 (Tex.Crim.App.1998) (op. on reh'g).

**6.** The trial court need not engage in this balancing test unless the opponent of the evidence further objects based upon Rule 403, that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. *Montgomery,* 810 S.W.2d at 398. Once a Rule 403 objection is raised, however, the trial court has no discretion as to whether or not to engage in the balancing process.

cretion in excluding evidence only when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, by considerations of undue delay, or needless presentation of cumulative evidence. TEX. R.CRIM. EVID. 403; *see also Gilbert v. State*, 808 S.W.2d 467, 471–72 (Tex.Crim. App.1991); *Crank v. State*, 761 S.W.2d 328, 342 n. 5 (Tex.Crim.App.1988). In reviewing the trial court's balancing test determination, a reviewing court is to reverse the trial court's judgment "rarely and only after a clear abuse of discretion." *Montgomery*, 810 S.W.2d at 389. The reviewing court, however, cannot simply conclude "the trial judge did in fact conduct the required balancing and did not rule arbitrarily or capriciously." *Id.* at 392. The trial court's ruling must be measured against the relevant criteria by which a Rule 403 decision is made. *Id.* In other words, the reviewing court must look at the proponent's need for the evidence in addition to determining the relevance of the evidence. *Id.* at 392–93. The relevant criteria in determining whether the prejudice of an extraneous offense outweighs its probative value include:

> (1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;
>
> (2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way";
>
> (3) the time the proponent will need to develop the evidence, during which the

jury will be distracted from consideration of the indicted offense;

(4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.

*Santellan v. State*, 939 S.W.2d 155, 169 (Tex.Crim.App.1997) (citing *Montgomery*, 810 S.W.2d at 389–90).

▮▮▮▮ In the instant case, the Court of Appeals evaluated some of the criteria set out in *Montgomery*. The court concluded the evidence was not specifically compelling because appellant did not know when the victim committed the extraneous violent acts and whether they were intentional. *Mozon*, slip op. at 5. Also, the court emphasized there was other compelling evidence supporting appellant's claim of self-defense. Absent from the Court of Appeals's examination, however, is a discussion of the "unfair prejudice" the admission of this evidence would have caused the State. A discussion of the evidence's prejudice is necessary because Rule 403 creates a presumption of admissibility of all relevant evidence and authorizes a trial judge to exclude such evidence only when there is a "clear disparity between the degree of prejudice of the offered evidence and its probative value."[7] Additionally, the Court of Appeals failed to address how this "unfair prejudice" caused the evidence's probative value to be substantially outweighed. We conclude such a discussion was particularly necessary in light of the prejudice concerns raised by this evidence and because this was the only evidence appellant proffered to show her state of mind; that is, to show she reasonably believed the victim intended to carry

---

7. *See e.g., Joiner v. State*, 825 S.W.2d 701, 708 (Tex.Crim.App.1992); *McFarland v. State*, 845 S.W.2d 824, 837 (Tex.Crim.App.1992), *cert. denied*, 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993); *Green v. State*, 840 S.W.2d 394, 410 (Tex.Crim.App.1992). Evidence will be considered "unfairly prejudicial" when it has an undue tendency to sug-

gest that a decision be made on an improper basis, commonly an emotional one. *See Montgomery*, 810 S.W.2d at 389 (citing Advisory Committee's Note to Federal Rule of Evidence 403).

The author acknowledges Judge Meyers' input concerning this portion of the opinion.

out his threats of violence when he pushed his lunch tray aside.

Accordingly, we vacate this portion of the Court of Appeals' opinion and remand for the court to properly address the Rule 403 issue as required by *Montgomery*.

KELLER, J., delivered a dissenting opinion in which McCORMICK, P.J. and KEASLER, J. joined.

I would not remand this case for the Court of Appeals to articulate what seems to be fairly obvious: the extraneous offenses posed the danger of unfair prejudice because they convey the impression that the victim in this case is a criminal, who perhaps deserved what he received. The law, however, does not permit private individuals to resort to self-help except under narrowly prescribed circumstances, nor does it permit a vigilante justice, in which private individuals impose their own punishments upon suspected lawbreakers. That the victim in the present case may have been a "bad" person, a criminal, and a violent lawbreaker is not itself a consideration that the law permits a jury to take into account. Introducing such evidence, however, may encourage a jury to ignore appellant's illegal behavior on the ground that the victim deserved what he received.

If appellant had possessed a legitimate claim of self-defense, she may have been entitled to produce evidence of her knowledge of the victim's past behavior to show that she reasonably perceived that she was in danger. *See Hamel v. State*, 916 S.W.2d 491, 493 (Tex.Crim.App.1996). But appellant had no valid claim of self-defense.[1] She failed to raise evidence of at least two required elements for self-defense involving the use of deadly force. To justify the use of deadly force in self-defense, the defendant must show, among other things, that (1) a reasonable person in the actor's situation would not have retreated, and (2) he reasonably believed that the deadly force was *immediately necessary* to protect himself against the other's use or attempted use of unlawful *deadly* force. Texas Penal Code § 9.32(a)(2) & (3)(A). Appellant was in a cafeteria filled with people when she set the victim on fire. While there was some evidence in the record to suggest that appellant could have reasonably perceived that she was in imminent danger of being subjected to unlawful force, nothing in the record suggests that she was in imminent danger of being subjected to unlawful *deadly* force. And even if there were such evidence, the only rational conclusion from the evidence presented is that a reasonable person in appellant's position could have and would have retreated rather than escalate the confrontation.

Hence, appellant was not entitled to an instruction on self-defense. Because self-defense was not a proper issue in the case, the extraneous offenses had little if any probative value. Given the danger of unfair prejudice that would occur if evidence of those offenses were admitted, the trial court did not err in excluding the evidence under Rule 403, and the Court of Appeals did not err in affirming the trial court's decision.

I would affirm the Court of Appeals.

---

1. Although appellant received an instruction concerning self-defense in the jury charge, that does not change the analysis. Appellant is not entitled to relief simply because she received a windfall in the jury instructions. *See Malik v. State*, 953 S.W.2d 234, 239 (Tex. Crim.App.1997).