Terrence Markeith Kelley v. State of Texas















IN THE
TENTH COURT OF APPEALS
 

No. 10-99-213-CR

Â Â Â Â Â TERRENCE MARKEITH KELLEY,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 40th District Court
Ellis County, Texas
Trial Court # 22,409-CR
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
C O N C U R R I N G O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â 
Â Â Â Â Â Â Â On the record before this court, I cannot conclude that the trial court erred by admitting
certain photographs. Appellant concedes the relevancy of the photographs by acknowledging
they are âsomewhat probative.â His complaint relates solely to the balancing of the probative
value against the danger of unfair prejudice. The substance of the photographs was already in
evidence by testimony without objection. Other photographs of the victimâs body at the
autopsy were also in evidence. While the probative value may have been low, given the other
evidence before the jury the danger that the graphic photographs of Ramirez âcovered and
surrounded by blood and medical equipmentâ would be unfairly prejudicial is also very low. 
In reviewing the trial courtâs balancing test determination, a reviewing court is to reverse the
trial courtâs judgment ârarely and only after a clear abuse of discretion.â Mozon v. State, 991
S.W.2d 841, 847 (Tex. Crim. App. 1999). Thus, I cannot join the conclusion that the trial
court abused its discretion in holding that the danger of unfair prejudice did not outweigh the
probative value of the photographs and admitting them. Because the Courtâs opinion concludes
the error was harmless, an analysis with which I do agree, I join in the result.


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â TOM GRAY
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Concurring opinion delivered and filed June 21, 2000
Publish



b>Armendariz
v. State, 123 S.W.3d
401, 404 (Tex. Crim. App. 2003).  We, therefore, proceed with our Rule 403
analysis.

Under Rule 403, relevant evidence may be
excluded where its Âprobative value is substantially outweighed by the danger
of unfair prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, or needless presentation of cumulative evidence.ÂÂ 
Tex.
R. Evid. 403.Â  When conducting
a Rule 403 analysis, the
trial court must balance: (1) the inherent probative force of the proffered
item of evidence; (2) the proponentÂs need for that evidence; (3) any tendency
of the evidence to suggest decision on an improper basis; (4) any tendency of
the evidence to confuse or distract the jury from the main issues; (5) any tendency
of the evidence to be given undue weight by a jury that has not been equipped
to evaluate the probative force of the evidence; and (6) the likelihood that
presentation of the evidence will consume an inordinate amount of time or
merely repeat evidence already admitted. Â Gigliobianco v. State, 210 S.W.3d 637, 641-42 (Tex.
Crim. App. 2006); Newton v. State, No.
10-06-00160-CR, 2009 Tex. App. LEXIS 6534,Â at *9-10Â (Tex. App.ÂWaco Aug. 19, 2009, no pet. h.).Â  

Â Â Â Â Â Â Â Â Â Â Â  Carter opined that Ruffin suffers from
Âmajor depression with psychotic features,Â including Âconsiderable irrationality,Â
delusions, paranoia, and Âlack of contact with reality.ÂÂ  He explained
Âdelusional thinkingÂ to mean Âbeliefs that arenÂt based in reality,Â but a
delusional person often believes that the delusions are true.Â  Ruffin believed
he was communicating with aliens and was an heir to the English throne.Â  Carter
further explained that a paranoid person believes that Âpeople are out to get
himÂ and is suspicious and mistrustful.Â  According to Carter, Ruffin
Âinterprets what [people] say and do according to his irrational or paranoid
thinking, so his response to them is going to be based on his own irrationality
as opposed to the other personÂs more rational state of being.ÂÂ  He reviewed
the recording of RuffinÂs conversation with the police negotiator, whom Ruffin
believed was a doctor.Â  Carter believed that Ruffin was paranoid, irrational,
hearing and seeing things, and unaware of the affect of his behavior on others
on the night of the offense.Â  He opined that RuffinÂs condition Âdiminished his
capacity to make rational judgments.Â

Several of RuffinÂs friends and family
members testified to his mental state.Â  They testified that Ruffin was obsessed
with the color orange, burned his motherÂs paintings because they contained
other colors, talked to the television and a cigarette lighter, removed
electrical appliances from the home because they were Âbugged,Â wore a t-shirt
with aluminum foil taped to it because he was receiving signals from a tower,
cut his friendÂs hand when the friend failed to say that orange was his
favorite color, believed he was receiving secret messages from the television,
fired a doctor when his family tried to seek help, refused to eat his motherÂs
food because he believed she was poisoning him, separated a photograph of his
mother and father, believed that women were Âgetting rid of the men,Â promised his
nephew a thousand orange helicopters from his kingdom, believed he had a castle
in Scotland, and believed he was an heir to the thrown.Â  Deputy Carol Brown,
RuffinÂs friend, was present during the standoff and testified that Ruffin said
some unusual things and stated that he was declaring martial law.Â  Witnesses
described Ruffin as Âoff in left field,Â having Âlost his rocker,Â and in his
Âown world.Â

Â Â Â  Â Â Â Â Â Â Â  Ruffin testified that he first
noticed a problem when he drove through town and saw that it was a Âhippy townÂ
painted in Âpsychedelic colors.ÂÂ  He explained that people on television were
talking to him and ridiculing him.Â  He heard two voices in his head: one female
and Christian, the other male and Muslim.Â  The voices liked each other, but not
Ruffin.Â  He covered his head with aluminum foil to escape the voices.Â  He
believed that the colors blue and orange were a Âmafia plan.ÂÂ  He recalled
cutting his friendÂs hand.Â  He believed that his mother murdered his father and
brother and thought the Christian girls were killing the men.Â  He asked the
SheriffÂs Department for a badge because he believed he was the Âsupreme
commanderÂ of the world.

On the night of the offense, Ruffin
thought he was being hunted by Muslims.Â  He had heard voices laughing at him
and thought someone was stealing from him.Â  When Brown called out to him, he
told her to go away, accused her of trespassing, and fired some shots.Â  At some
point, he heard a helicopter and believed it was an Apache helicopter, with
missiles, being flown by his sister.Â  He thought Muslims were in the bushes, so
he fired in the direction of the voices.Â  He believed there were hundreds of
Muslims.Â  In the morning, he was surprised to see police vehicles in front of
his house.Â  After his arrest, Ruffin believed that the girls in the jail were
ÂwitchesÂ walking around with black teeth and laughing.

As the Court of Criminal Appeals noted,
ÂThe testimony proffered by Dr. Carter in this case is clearly relevant to the
issue of whether appellant intended to shoot at police officers during the
standoff or whether, because of a mental disease and the delusions that he
suffered as a result of that disease, he believed that he was shooting at
Muslims or some other figment of his mind.ÂÂ  Ruffin,
270 S.W.3d at 596.Â  Because CarterÂs testimony was
admissible to rebut the mens rea element of aggravated assault on a
public servant, the inherent probative value of the evidence was great.

We are not persuaded that the probative value
of this evidence is minimized by the lay testimony admitted at trial:

Although the trial judge permitted
numerous lay witnesses, including appellant himself, to testify to
Âobservational evidenceÂ concerning appellantÂs mental breakdown and delusions,
that evidence was never put into a mental-disease context or its
psychological significance explained.

Â 

Ruffin, 270 S.W.3d at 596-97 (emphasis added).Â  CarterÂs
testimony was needed to perform this very function.

While the testimony would certainly be
prejudicial to the StateÂs case, it would not be unfairly so in
proportion to its probative value.Â  See Vasquez v. State, 67 S.W.3d 229, 240 (Tex. Crim. App.
2002) (ÂTo violate Rule 403, it is not
enough that the evidence is ÂprejudicialÂ - it must be unfairly prejudicial.Â).Â  Rather than suggesting a decision on an
improper basis, CarterÂs testimony would place the evidence of RuffinÂs mental
state in the proper context and allow the jury to properly evaluate the
probative force of the evidence.Â  The evidence goes to the heart of the main
issue in the case: whether Ruffin committed the charged offense.Â  We cannot say
that the jury would have been confused, distracted, or misled by this
evidence.Â  See Ruffin, 270 S.W.3d at 595 (Expressing Âconfidence that our Texas judges and
juries are sufficiently sophisticated to evaluate expert mental-disease
testimony in the context of rebutting mens rea just as they are in
evaluating an insanity or mental-retardation claim.Â).

Finally, the record does not suggest
that the testimony would cause Âundue delayÂ or Âneedless presentation of
cumulative evidence.Â Â CarterÂs testimony is not cumulative of other testimony
at trial.Â  The bill of exception consumed approximately nineteen pages of the
record, and CarterÂs testimony at the punishment phase of trial consumed about
forty pages of the record.

In summary, the above factors favor
admission of the evidence.Â  The trial court abused its discretion by excluding
RuffinÂs proffered expert testimony under Rule 403.Â  

We now address whether Ruffin suffered
harm as a result of the exclusion of his evidence.Â  The State argues that harm
should be evaluated for non-constitutional error.Â  Citing Walters v. State,
247 S.W.3d 204 (Tex. Crim. App. 2007), Ruffin contends that harm should be
evaluated for constitutional error:

The erroneous exclusion of evidence
offered under the rules of evidence generally constitutes non-constitutional
error and is reviewed under Rule 44.2(b). Â The
exception is when erroneously excluded evidence offered by the criminal
defendant Âforms such a vital portion of the case that exclusion effectively
precludes the defendant from presenting a defense.Â Â Exclusion of evidence
might rise to the level of a constitutional violation if: (1) a state
evidentiary rule categorically and arbitrarily prohibits the defendant from
offering otherwise relevant, reliable evidence vital to his defense; or (2) a
trial courtÂs clearly erroneous ruling results in the exclusion of admissible
evidence that forms the vital core of a defendantÂs theory of defense and
effectively prevents him from presenting that defense. Â In such a case, Rule 44.2(a), the
standard for constitutional errors, would apply.

Â 

Walters, 247 S.W.3d at 219 (emphasis added).

Texas
does not recognize diminished capacity as an affirmative defense i.e., a
lesser form of the defense of insanity. Â Jackson
v. State, 160 S.W.3d
568, 573 (Tex. Crim. App. 2005).Â  It
is Âsimply a failure-of-proof defense in which the defendant claims that the
State failed to prove that the defendant had the required state of mind at the
time of the offense.ÂÂ  Id.Â  The standard for non-constitutional error
applies.Â  See Morales
v. State, 32 S.W.3d
862, 866-67 (Tex. Crim. App. 2000) (remanding case to the First Court of
Appeals to evaluate the exclusion of defendantÂs expert testimony for
non-constitutional error).

Â When evaluating harm from non-constitutional error
flowing from the exclusion of relevant evidence, we examine the record as a
whole, and if we are fairly assured that the error did not influence the jury
or had but a slight effect, we conclude that the error was harmless. Â Ray v. State, 178 S.W.3d 833, 836 (Tex. Crim.
App. 2005). Â Any error must be disregarded unless it affected RuffinÂs
substantial rights. Â See Tex. R.
App. P. 44.2(b).

The State argues that RuffinÂs
substantial rights were not affected because he was able to present similar
testimony from other witnesses, the record contains a wealth of evidence to
support the verdict,[1]
and the jury must have considered RuffinÂs diminished mental state, having assessed
ten years in prison for each count.[2]
Â 

Whether Ruffin knew he was shooting at
law enforcement officers was central to the case.Â  The lay testimony of RuffinÂs mental
state amounts to Âobservational evidenceÂ that was Ânever put into a
mental-disease context or its psychological significance explained.ÂÂ  Ruffin, 270 S.W.3d at 597.Â  The jury did not have the opportunity to hear CarterÂs
testimony, which was relevant to his failure-of-proof defense, and to evaluate its
credibility in addition to other evidence presented at trial.Â  

In Morales v. State, No. 01-99-00457-CR, 2001 Tex. App. LEXIS 3219Â (Tex. App.ÂHouston [1st Dist.] May 17, 2001, no pet.) (not designated for publication),
Morales was charged with
felony driving while intoxicated.Â  See Morales,
2001 Tex. App. LEXIS 3219, at *1.Â  Morales
called an acquaintance who testified that he and Morales had four or five beers
several hours before the offense; thus, he did not believe that Morales was
intoxicated.Â  Id. at *7.Â  Morales sought to introduce expert testimony
to show that he Âwould not have been mentally or physically impaired because of
the alcohol burn-off rate.ÂÂ  Id.Â  When conducting its harm analysis, the First Court noted that the sole issue at trial was whether
Morales was driving while intoxicated.Â  See id. at *9.Â  MoralesÂs
Âprimary defense was that he could not have been driving while intoxicated
because such a long period of time had elapsed since his last drink.ÂÂ  Id. Â The expertÂs testimonyÂ would have Âsubstantially bolsteredÂ that defense.Â 
 Id. at *9-10.Â  Although the First Court did not believe that Morales
would have been acquitted Âbut for the trial courtÂs error,Â it could not say
with Âfair assurance
that the excluded
testimony would have had no effect, or but slight effect, on the juryÂs
consideration of [MoralesÂs] defense.ÂÂ  Id. at *10.Â  Morales was harmed
because the Âjury was not given an opportunity to hear testimony relevant to
[his] defense and assess its credibility along with the other evidence in the
case.ÂÂ  Id.Â  

As in Morales, we do not have a
fair assurance that the exclusion
of CarterÂs testimony did not influence the jury or had but a slight effect.Â  Because
we conclude that Ruffin was harmed by this error, we reverse the judgment and
remand this cause to the 

trial court for further proceedings
consistent with this opinion.

Â Â Â 

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

(Chief
Justice Gray dissenting with note)*

Reversed and
remanded

Opinion
delivered and filed September 23, 2009

Do not publish

[CRPM]

Â 

*Â Â Â Â Â Â Â Â Â Â  (Chief
Justice Gray dissents.Â  A separate opinion will not issue.Â  The admissibility
of the evidence is dependent on a balancing test administered by the trial
court and even if erroneously excluded must be harmful.Â  Based on the precedent
of this Court, I cannot conclude the trial court erred in his decision to exclude
the evidence or that, if erroneous, the exclusion was harmful.)

Â Â Â Â Â Â Â Â Â Â Â  









[1]
Â Â Â Â Â Â Â Â Â Â Â Â Â  On original
submission, we noted several facts supporting the verdict: (1) Ruffin had known
Brown for years, knew that she was a law enforcement officer, and acknowledged
her on the night of the offense; (2) some officers had activated the overhead
lights on their patrol cars at the time of their arrival at the scene; (3) the
headlights of some patrol cars illuminated the law enforcement markings on
other vehicles, as well as officers in uniform; and (4) at some point during
the night, Ruffin fired shots at both the officers and a police helicopter. Â See
Ruffin v. State, 234 S.W.3d 224, 227-28Â (Tex.
App.ÂWaco 2007, pet. granted).

Â 





[2] Â Â Â Â Â Â Â Â Â Â Â Â Â  Citing Peters
v. State, 31 S.W.3d 704Â (Tex. App.ÂHouston [1st Dist.] 2000, pet.
refÂd) and Wilkerson v. State, 766 S.W.2d 795Â (Tex. App.ÂTyler
1987, writ refÂd), Ruffin contends that exclusion of CarterÂs testimony was
harmful.Â  Because these cases involve testimony excluded at the punishment
phase, they are not particularly helpful.