Affirmed and Memorandum Opinion filed February 9, 2006









Affirmed and Memorandum Opinion filed February 9,
2006.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-04-00536-CR

_______________

 

NATHAN ADAMS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

_______________________________________________

 

On Appeal from the 405th District Court

Galveston County, Texas

Trial Court Cause No. 02CR2156

_______________________________________________

 

M E M O R A N D
U M   O P I N I O N

Appellant, Nathan Adams, appeals his conviction for
manslaughter as a lesser-included offense of murder.  In two issues, appellant claims that the
trial court abused its discretion by (1) improperly allowing two defense
witnesses to be impeached by prior criminal convictions, and (2) excluding the
testimony of two witnesses concerning prior acts of aggression by the deceased.  Because all dispositive issues are clearly
settled in law, we issue this memorandum opinion and affirm.  See Tex.
R. App. P. 47.4.

 








I. 
Background

Appellant and the deceased, Linda Napoli, began dating in
1993 and bought a house together in Texas City, Texas.  Their relationship soon became
tumultuous.  Appellant testified that
Napoli became jealous and aggressive when she drank and accused him of wanting
to be with other women.  According to
appellant, on one such occasion she slapped him, and on another, she threatened
him with an icepick she kept in her purse. 
Other witnesses for appellant also testified as to Napoli=s aggressive behavior.  The relationship continued to deteriorate
until appellant moved out in 2001.  

Appellant testified that after the couple separated, Napoli
began following him and calling around to find out where he was going and who
he was seeing.  Appellant stated that
Napoli threatened to Afuck [him] up@ after hearing that he took another woman for a drink.  Appellant further testified that Napoli drove
by appellant=s house late one night in February of
2002 and saw a car that she did not recognize. 
Napoli knocked on appellant=s door and began screaming at him as
soon as he let her in.  She searched the
house and the garage for another woman, and when she did not find anyone, she
picked up a can opener and tried to hit appellant.  Appellant blocked her with his hand and told
her that he would call the police if she did not leave.  She did not leave, and he called the
police.  The police told Napoli to leave
and gave her a criminal trespass warning.

On September 2, 2002, appellant went to a local bar.  Napoli arrived at the same bar a little later
and the two exchanged words.  According
to appellant, Napoli was Araising hell with [him]@ because he had not stopped by the
house.  Appellant tried to explain to her
that he did not have any reason to come by, and he did not know that she
expected him to do so.  Appellant left
the bar.  Later that evening, appellant
went to a different bar.  Napoli arrived
shortly thereafter, ordered a beer, and told the bartender that appellant would
pay for her beer.  Appellant paid for her
beer and left at around 9:00 p.m. 








According to appellant, the following events occurred after
he went home that evening.  Napoli
knocked on appellant=s door.  As soon as
appellant opened the door and let her in the house, she screamed at him and
stated that she hoped he was killed on his motorcycle.  Napoli tried to scratch appellant=s face and eyes. Appellant tried to
block her, pushing her over the corner of the coffee table onto the couch.  Napoli immediately began digging for
something in her purse.  Appellant knew
that Napoli carried an icepick and a razor in her purse.  He had never seen her so mad and did not know
what she was going to do, so he retrieved his gun.  He did not intend to use the gun but thought
that Napoli would leave once she saw it. 
After he got the gun, he came into the room where Napoli was seated and
told her to leave.  Napoli threw her
hands up and hit his wrist, causing the gun to fire.

Appellant called 911, reported an accidental shooting, and
waited for the police officer to arrive at the scene.  Napoli was found seated on the couch with a
cigarette in her mouth.[1]  There were no signs of a struggle at the
scene, but Napoli=s right arm was sitting on her purse, from which an ice-pick
was later recovered.  A medical examiner
determined that the cause of Napoli=s death was a gunshot wound to the
head.  He further determined that the gun
was between two inches and two feet away when it was fired.  Appellant was convicted of manslaughter and
punishment was assessed at eighteen years= confinement. 

I. 
Improper Impeachment

Appellant first contends that the trial court erred by
improperly allowing two witnesses to be impeached by prior criminal
convictions.  However, appellant has
failed to preserve error with respect to each witness.

 








With respect to the first witness, Shirlyn Bobbit, appellant
objected at trial to the relevance of a prior conviction introduced for
impeachment purposes.[2]  The trial court specifically overruled the
objection as to relevance.  On appeal,
appellant claims that the conviction was inadmissible under Rule 609 of the
Texas Rules of Evidence.  See Tex. R. Evid. 609(c) (providing in
relevant part that evidence of a prior conviction is not admissible if
probation has been satisfactorily completed and the person has not been
convicted of a subsequent felony or crime involving moral turpitude).  No error is preserved when the objection at
trial differs from the complaint made on appeal.  Coffey v State, 796 S.W.2d 175,
179B80 (Tex. Crim. App. 1990); Thomas
v. State, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986).  Because appellant did not object at trial
that the conviction was inadmissible under Rule 609, nothing was preserved for
review.








The second witness was Peggy Egbert, an acquaintance of
appellant employed at a local bar. 
Appellant contends that the trial court erred in allowing her to be
impeached with a prior conviction of a third party.  At trial, the witness described the bar as
hosting charitable and other public interest events frequented by local judges
and police officers.  The State asked on
cross-examination whether the witness was working when her employer=s assets were seized and charges were
filed Afor gambling - gambling equipment,
gambling paraphernalia.@  The witness responded
to the effect that she was employed there but was not present at the time.  The State then asked the witness whether she
was in the courthouse when her employer was convicted.  The witness responded, Ano.@ 
After this exchange, counsel for appellant objected on the ground that
the questioning was improper character impeachment.  The State argued that the evidence was
admissible to correct the witness=s misleading portrayal of the bar as
frequented by law enforcement officials. 
The trial court overruled appellant=s objection, but no further questions
were asked about gambling or the charges filed. 

To preserve error for appellate review, a defendant must make
a specific and timely objection at trial. 
Johnson v. State, 878 S.W.2d 164, 167 (Tex. Crim. App. 1994); Thomas,
723 S.W.2d at 700.  When the grounds for
objection are apparent from the question, an objection is considered timely if
it is made before the witness answers and the testimony is received into
evidence.  Dinkins v. State, 894
S.W.2d 330, 355 (Tex. Crim. App. 1995). 
If an appellant Afails to object until after an objectionable question has
been asked and answered, and he can show no legitimate reason to justify the
delay, his objection is untimely and error is waived.@ 
Id.  Here, the prior convictions
which formed the basis for appellant=s objection were the subject matter
of the State=s questions.  Appellant=s ground for objection was therefore
apparent from those questions. However, appellant waited to object until after
the witness had answered both questions. 
Therefore, appellant=s failure to make a timely objection at trial waived any
error for review.  See id.  Appellant=s first issue is overruled.

II. 
Prior Violent Acts of the Deceased

In his second issue, appellant contends that the trial court
erred by excluding evidence of two prior acts of violence by the deceased,
Linda Napoli.  We review the trial court=s decision to exclude evidence under
an abuse-of-discretion standard.  Torres
v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002) (citing Burden v.
State, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001)).  A trial court abuses its discretion if its
decision to exclude evidence falls outside the zone of reasonable
disagreement.  Id.








Outside the presence of the jury, the trial court heard the
proffered testimony of two witnesses regarding two acts of violence by Napoli
that occurred over twenty years before trial. 
The first witness testified that in the late 1970s, Napoli pointed a gun
through the witness=s car window.  He
further testified that Napoli pulled the trigger, but the gun did not fire
because his passenger placed her finger between the firing pin and the
hammer.  The second witness testified
that twenty-five to thirty years before trial, she was sitting at a table with
Napoli when Napoli pulled a razor out of her purse and attempted to cut the
witness.

The State objected that the evidence was remote and any
relevance was substantially outweighed by its prejudicial effect.  See Tex.
R. Evid. 403.  The court sustained
the State=s objections.  Appellant argues that the issue of
self-defense was raised, and the prior acts were admissible under 404(b) and
403 of the Rules of Evidence.  Rule
404(b) provides in relevant part that evidence of other crimes, wrongs or acts
of a person is admissible only to the extent it has relevance apart from
character conformity.  See Tex. R. Evid. 404(b).  However, even assuming the evidence was
admissible under Rule 404(b), we conclude that the trial court was within its
discretion to exclude the evidence pursuant to Rule 403.  See Mozon v. State, 991 S.W.2d 841,
846 (Tex. Crim. App. 1999) (holding that evidence admissible under Rule 404(b)
may nonetheless be excluded under Rule 403).

Under Rule 403, the trial court may exercise its discretion
to exclude evidence when its probative value is substantially outweighed by the
danger of unfair prejudice, confusion of the issues, misleading the jury, undue
delay, or needless presentation of cumulative evidence.  Tex.
R. Evid. 403; Mozon, 991 S.W.2d at 846B47. 
The relevant criteria in weighing the evidence under Rule 403 include
the following: (1) how compellingly the evidence serves to make a fact of
consequence more or less probable; (2) the potential the evidence has to
impress the jury in an irrational but indelible way; (3) the time appellant
would need to develop the evidence, during which the jury would be distracted
from consideration of the indicted offense; and (4) appellant=s need for the evidence; i.e.,
whether appellant has other evidence available to establish the fact and
whether the fact is related to an issue in dispute.  Mozon, 991 S.W.2d at 847.  








Here, the proffered evidence served to make it more probable
that Napoli was the first aggressor.  The
fact that she previously attacked someone with a weapon from her purse while
seated makes it more likely that she used the same method of attack against
appellant.  In addition, the evidence
that she previously acted recklessly with a firearm is relevant to demonstrate
why she might have attempted to struggle with appellant instead of immediately
leaving as soon as she saw the gun.  The
evidence was developed on the record within a few pages of testimony.  However, the probative value of the two prior
incidents was reduced by the fact that both incidents occurred over twenty
years before trial.  Thus, the remoteness
of the evidence rendered it less compelling and more likely to impress the jury
in an irrational but indelible way.

Moreover, appellant offered other evidence to prove that
Napoli was the first aggressor. 
Appellant testified that she carried an icepick or razor in her
purse.  Other witnesses testified that
Napoli was known to carry weapons in her purse, and an ice-pick was found in
her purse.  Appellant also introduced
opinion and reputation evidence as to Napoli=s violent and aggressive character.  In addition, the trial court admitted other,
more recent, prior violent acts of Napoli into evidence, including an incident
in which she attacked appellant with a can opener within a year before her
death.  See Reynolds v. State, No.
01-01-00407-CR, 2002 WL 31478843 (Tex. App.CHouston [1st Dist.] Nov. 7, 2002,
pet. ref=d) (not designated for publication)
(holding the trial court acted within its discretion by excluding evidence of
an extraneous offense that occurred twenty-one years before the alleged murder
at issue when other evidence of more recent extraneous conduct was admitted).

In light of the remoteness of the prior acts, the danger of
unfair prejudice, and the cumulativeness of the evidence, we cannot conclude
that the trial court=s ruling was outside the zone of reasonable
disagreement.  Because the trial court
acted within its discretion in excluding evidence as to Napoli=s prior acts of violence, we overrule
appellant=s second issue.








Accordingly, the judgment of the trial court is
affirmed.  

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered
and Memorandum Opinion filed February 9, 2006.

Panel consists of
Justices Hudson, Frost, and Seymore.

Do Not Publish C Tex.
R. App. P. 47.2(b).

 











[1]  The police
officer who first arrived at the scene testified that when he found Napoli, she
still had a cigarette in her mouth. 
However, appellant argued at trial that the cigarette must have
subsequently been found on the floor.





[2]  Appellant  stated the grounds for his objection as
follows: AMy response really would be relevance.  What does that have to do with the testimony
that she=s given today?@