Bailey C. Moseley, Justice,
dissenting
The task of attempting to gauge- the prejudicial effect of inadmissible evidence on a jury is a mercurial and indistinct obligation. In this situation, we have determined that although there were good and proper objections available to Roderick Beham pursuant to Article 37.07 of the Texas Code of Criminal Procedure[11] to bar the admission of the evidence of the Tennessee charges lodged against him as a juvenile, we have also determined that Be-ham failed to raise those proper objections, thereby not preserving them for appeal. The only objection preserved by Beham that we are allowed to review is that based on Rule 403 of the Texas Rules of Evi-r dence, a Rule that bars evidence which is more prejudicial than probative. See Tex.R. Em 403,, 60 Tex. B.J. 1129, 1134 (1997). If Beham had not mentioned an objection under Rule 403, it is conceivable that the jury could have considered this evidence and that Beham would have had no reversible complaint on appeal. Under the balancing test we are supposed to employ in assessing a Rule 403 objection, the first factor is a determination of the probative value of evidence which, was proffered and allowed into evidence by the trial judge. Mozon v. State, 991 S.W.2d 841, 847 (Tex.Crim.App.1999). If no other proper objection is otherwise raised to the admissibility of. evidence and the evidence is permitted to be introduced, does the evidence itself have absolutely no probative value, upon which the jury can rely? If we determine that Beham failed to preserve his objection under Article 37.07, when we determine that it is tainted or questionable evidence for the purpose of a Rule. 403 analysis, do we not implicitly grant a backdoor objection to the admissibility of that same evidence when the objection has not been preserved for appeal?
Rather than engaging in efforts to answer more esoteric questions than the ones posed above, I have attempted to discern what might have gone on in the minds of the jurors in the Beham case when determining his punishment. There is no scientific or entirely logical way for one person to quantify the thought process of another, even if both people simultaneously view the. same thing under the. same circumstance. The problem, in this case is that the crime of which Beham was convicted is a first degree felony, and carries with it a potential penalty of imprisonment from five to ninety-nine years or life imprisonment, plus a fine of up to $10,000.00. See, Tex. Penal Code Ann. §§ 29.03(b), 12.32 (West 2011). Here, the jury determined that twenty-five years’ imprisonment (and no fine) was appropriate. Conducting a very non-scientific study of fairly recent reported cases of aggravated robbery across the State reveals that the very low end of the sentences meted out by courts was ten to fifteen years’ imprisonment. These are extraordinary. The penalties given to the apparently truly “bad” offenders (such as those who are repeat offenders or those whose activities during the aggravated robberies caused death, massive injuries, or extreme fright on the part of the victims) seemed to range in the punishment range of forty years to ninety-nine years’ imprisonment. These are likewise -fairly rare. More commonly, people convicted of their first such offense where no one was injured and there was no compounding circumstance that would uncom *743 monly inflame the passions of the jurors (such as a home invasion scenario), were generally meted out sentences in the same range as that given to Beham in this case. Had Beham received a fifteen-year sentence, I would have no problem in saying that the introduction of the Tennessee arrest had virtually no impact on the punishment phase of the trial. On the other hand, if the jury had returned with a sentence of thirty-five years, I believe that this would be fair assurance that the jury had been strongly impacted by that evidence. In other words, it does not appear that Beham received a sentence which was more than would ordinarily have been handed down by a jury that did not hear the evidence of the charges against Beham in Tennessee. After all, I think that almost any jury that is made aware that a robber waved a pistol around at a victim (certainly scaring the bejabbers out of the victim and very likely inviting disaster) should certainly get more than a wrist slap.
Our system has traditionally placed a great deal of trust in the wisdom of juries.[12] Simultaneously with the introduction of the evidence of the charges that were lodged against Beham in Tennessee, there was also evidence that those charges had been dismissed. Who are we to determine that when the jurors heard the State talk about repeated offenses going back many years, the jurors were not mulling over the fact that the dismissal might just well have proved that Beham had been unjustly charged? Which jurors considered the argument of the State regarding the importance of that evidence to be total balderdash?
We have no way to poll the jury to ask the members what weight they placed on the tainted and unusable evidence of the Tennéssee arrest; likewise, the trial court had no way to determine that at the time of trial. Looking at the outcome of the trial retrospectively, the length of the sentence given to Beham by the jurors suggests that the trial court would have been justified in believing that the evidence had, at most, only a slight effect on their decision.
I respectfully dissent.

. See Tex. Code Crim. Proc¡ Ann. art. 37.07 (West Supp.2014).

. In years past, the courts even deferred to the “wisdom of the jury” in defining what was meant by the word "promiscuous.” Johnson v. State, 933 S.W.2d 195, 201 (Tex.App.—Waco 1996, pet. ref’d).