**Affirmed and Memorandum Opinion filed May 14, 2024.**



**In The**

# Fourteenth Court of Appeals

---

## NO. 14-22-00855-CR

---

**ROBERT SHANNON CRAWFORD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 506th District Court**
**Grimes County, Texas**
**Trial Court Cause No. 18913**

---

## MEMORANDUM OPINION

A jury found appellant guilty of aggravated sexual assault of a child, his daughter J.C., and assessed punishment at confinement for life. In a single issue, appellant contends that the trial court erred by not excluding evidence of extraneous sexual offenses against two other children under Rule 403 of the Texas Rules of Evidence. We affirm.

# I. LEGAL PRINCIPLES

Generally, extraneous offenses may not be used against the accused in a criminal trial to prove that a person acted in accordance with their character. *See* Tex. R. Evid. 404(a)(1); *Harris v. State*, 475 S.W.3d 395, 402 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). Under Article 38.37 of the Code of Criminal Procedure, however, when a defendant is on trial for aggravated sexual assault of a child, a trial court may admit evidence of certain other sexual offenses involving children "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." Tex. Code Crim. Proc. art. 38.37, § 2(b). The statute recognizes that such evidence of extraneous offenses is "by definition, propensity or character evidence and that it is admissible notwithstanding those characteristics." *Harris*, 475 S.W.3d at 402.

Under Rule 403 of the Texas Rules of Evidence, a trial court may exclude relevant evidence if "the probative value of the evidence is substantially outweighed by the risk of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." *Perkins v. State*, 664 S.W.3d 209, 216 (Tex. Crim. App. 2022); *see* Tex. R. Evid. 403. Even when extraneous offense evidence is admissible under Article 38.37, a trial court is required to conduct a Rule 403 balancing upon proper objection or request. *Distefano v. State*, 532 S.W.3d 25, 31 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *see also* Tex. R. Evid. 403. The Rule 403 balancing test considers:

> (1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable;
>
> (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way;

(3) the time the proponent needs to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and

(4) the proponent's need for the evidence.

*Perkins*, 664 S.W.3d at 216.

An appellate court will reverse a trial court's ruling under Rule 403 "rarely and only after a clear abuse of discretion." *Id.* (quoting *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999)). Exclusion under Rule 403 is "a remedy that should be used sparingly, especially in 'he said, she said' sexual-molestation cases that must be resolved solely on the basis of the testimony of the complainant and the defendant." *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009). The rule "envisions the exclusion of evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Id.* (quoting *Connor v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)). We must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Inthalangsy v. State*, 634 S.W.3d 749, 754 (Tex. Crim. App. 2021).

## II.    BACKGROUND

The complainant, J.C., testified that she was born in Mexico in 1983. She was five or six years old when appellant began a relationship with J.C.'s mother and moved them to Navasota. Appellant married J.C.'s mother—his fourth wife— who was the niece of his third wife.[1] Appellant adopted J.C. The couple had two other children together.

---

[1] Appellant dated and married multiple women from the same family in Mexico, most of whom were much younger than him.

J.C. testified that on Thanksgiving Day in 1995, while J.C.'s mother was visiting family in Mexico, appellant came into J.C.'s room and had sex with her. He put his penis inside her vagina. She became pregnant, and appellant ultimately took her to a clinic and had her get an abortion, unbeknownst to J.C. at the time. J.C.'s mother testified that appellant admitted to impregnating J.C. The couple stopped talking to each other and essentially divided the house between them. They divorced about six years later.

Neither J.C. nor her mother reported the assault to the police because of their fear that they would be separated from each other and J.C.'s siblings. It wasn't until later, when the police were investigating appellant for another sexual assault of a child, that they were contacted by police and reported the assault.

The incident that sparked the police investigation was a report in 2021 that appellant had sexually assaulted his great grandson, T.L. T.L. had been in middle school at the time of the assaults and living with appellant a few years prior to the report. T.L. testified that on multiple occasions appellant forced T.L. to perform oral sex on appellant while in appellant's bedroom. During the final assault, T.L.'s younger brother walked in while it was happening. The younger brother also testified and recounted the incident.

Appellant's oldest daughter from his first wife—the grandmother of T.L.—testified that appellant confessed to her in 1995 that he had gotten J.C. pregnant and got her an abortion. He told her not to tell anyone, and she didn't until the abuse of T.L. came to light.

After the report in 2021, J.C.'s half-sister—appellant's daughter with J.C.'s mother—agreed with the police to make a recorded telephone call with appellant. The recording was played for the jury. During the call, appellant claimed that T.L. had been helping appellant put on his shoes, and that's what T.L.'s brother had

4

seen. When asked about J.C., appellant disclaimed having intercourse with her but admitted to impregnating her. He claimed that in the middle of the night he would have sex with J.C.'s mother, and, "I did that with [J.C.], I guess. I guess I did." He said, "It couldn't have penetrated her."

An investigator interviewed appellant, and a recording of the interview was admitted as an exhibit. During the interview, appellant admitted to rubbing his penis on J.C., ejaculating, and impregnating her.

Appellant's fourth wife's sister, M.E., testified that when appellant was married to his third wife—the aunt of M.E. and appellant's fourth wife—the couple brought M.E. from Mexico to Navasota. It was around 1986, and M.E. was about ten years old. It was appellant's idea to bring M.E. to Navasota and adopt her as their child. She stayed in Navasota for about a year and a half. While there, M.E.'s aunt abandoned them; M.E. asked to go with her aunt, but the aunt refused. M.E. testified about multiple instances of assault by appellant. He would touch her privates and force her to touch his privates. He attempted to penetrate her vagina with his penis multiple times. Ultimately, she overheard him arguing with another woman who mentioned the police, and within a few months, he took her back to Mexico and left her there.

Appellant presented several witnesses. Appellant's niece testified that the allegations were out of character for appellant; she didn't believe them. Appellant's nephew and longtime neighbor testified that he did not suspect any inappropriate behavior between appellant and J.C. or M.E. One of appellant's fellow jail inmates testified that he didn't believe appellant did what he had been charged with because appellant's story never changed.

The jury found appellant guilty of aggravated sexual assault of J.C. by penetrating her sexual organ with appellant's sexual organ.

5

### III. ANALYSIS

Appellant contends that the trial court erred by admitting evidence of the extraneous offenses against T.L. and M.E. because all of the Rule 403 factors favor exclusion. Appellant contends that (1) J.C.'s credibility was not attacked; (2) the extraneous offenses were remote in time and dissimilar to the charged offense; (3) the extraneous offense evidence was graphic in nature; (4) the evidence took a large amount of time to develop during the trial; and (5) the State's need for the evidence was low due to appellant's multiple admissions. We disagree with appellant.

### A. Probative Value and State's Need

Appellant admitted to impregnating J.C., but he consistently denied penetrating her sexual organ with his sexual organ—an element of the offense that the State was required to prove at trial. Both of the extraneous offenses involved appellant's penetration or attempted penetration of the children with appellant's sexual organ and were probative of appellant's propensity to sexually assault children. *See Alvarez v. State*, 491 S.W.3d 362, 371 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) ("Because the evidence of prior sexual abuse of children was especially probative of Appellant's propensity to sexually assault children, the Rule 403 balancing test normally will not favor the exclusion of evidence of the defendant's prior sexual assaults of children." (quotation omitted)).

In particular, the evidence showed appellant's propensity to assault children who were living in his house and related to him. *See Trotti v. State*, No. 14-21-00536-CR, 2023 WL 5208815, at *7 (Tex. App.—Houston [14th Dist.] Aug. 15, 2023, pet. ref'd) (similar instances of sexual contact and similar circumstances, such as both victims being children of the defendant's domestic partner). The evidence concerning M.E. showed appellant's history of taking a young girl from

6

Mexico to the United States, similar to J.C. And the evidence concerning T.L. helped provide context for how the allegation concerning J.C. came to light after decades of silence within the family.

Appellant presented multiple witnesses who indirectly attacked J.C.'s credibility by opining that appellant was innocent. *See id.* (admissible extraneous offense in a "he said, she said" case when the defendant denied his guilt). Moreover, the incidents involving M.E. were not too remote compared to the offense against J.C., and the incidents involving T.L. were very recent. *See id.* ("Courts have concluded that acts of child molestation occurring twenty-nine or thirty years in the past may be admissible in the face of a Rule 403 objection.").

These factors favor admission.

**B.    Time and Unfair Prejudice**

Appellant notes that more than half of the witnesses called at trial addressed, in whole or in part, the extraneous offenses. As the most recent event that precipitated the State's investigation of appellant, most of the extraneous offense evidence concerned T.L. Much less of it addressed M.E. Although the third balancing factor, thus, could favor exclusion of the T.L. evidence, this factor favors admission of the M.E. evidence. *See id.* (admissible when the extraneous offense victim's testimony comprised fifteen percent of the trial testimony).

Of course the evidence of both extraneous offenses was prejudicial, but it was not necessarily more prejudicial than the offense against J.C. *See West v. State*, 554 S.W.3d 234, 240–41 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (reasoning that although remote sexual misconduct against multiple children was inflammatory and had a tendency to suggest a decision on an improper basis, the sexual misconduct was "no more serious than the allegations forming the basis for

the indictments against appellant in today's case"). While appellant assaulted T.L. and M.E. more frequently than J.C., the offense against J.C. involved his penetrating J.C.'s sexual organ with his sexual organ, impregnating her, and forcing her to undergo an abortion.

Finally, the extraneous offense evidence was not *unfairly* prejudicial. Article 38.37 authorized the admission of these extraneous offenses for the explicit purpose of showing appellant's actions in conformity with his character, i.e., propensity. *See Harris*, 475 S.W.3d at 402. While ordinarily Rule 403 would authorize the exclusion of evidence to prevent a propensity inference, in this case the propensity inference is authorized by Article 38.37. *See id*; *Alvarez*, 491 S.W.3d at 371.

The fourth balancing factor favors admission.

## C.    No Error

Balancing the Rule 403 factors, most of which favor admission, we conclude that the trial court did not abuse its discretion by overruling appellant's objection.

## IV.   CONCLUSION

Appellant's sole issue is overruled. The trial court's judgment is affirmed.

/s/     Ken Wise
Justice

Panel consists of Chief Justice Christopher and Justices Wise and Jewell.

Do Not Publish — Tex. R. App. P. 47.2(b)