# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00241-CR

**Eric Matthew Castle, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT
### NO. 12884, HONORABLE REVA TOWSLEE CORBETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Eric Matthew Castle of the offense of burglary of a habitation. *See* Tex. Penal Code Ann. § 30.02(a)(3) (West 2003). Punishment was assessed at 25 years' imprisonment. In four points of error, Castle asserts that the district court abused its discretion in admitting an alleged telephone conversation between a police officer and someone purporting to be Castle, that the State failed to provide notice of its intent to introduce an extraneous offense, and that the evidence is factually insufficient to support the conviction. We will affirm the judgment.

## BACKGROUND

The jury heard evidence that on April 2, 2007, the Bastrop residence of James and Janet Grabbert was burglarized and numerous items were stolen. The primary suspect in the burglary was Castle, the boyfriend of the Grabberts' granddaughter, Susan Uden. Evidence connecting

Castle to the crime included an alleged telephone conversation between Officer Preston Kyle of the Bastrop Police Department and someone purporting to be Castle. During the conversation, according to Kyle, this person confessed to committing the burglary. Also admitted into evidence was testimony tending to show that Castle had committed an extraneous offense, specifically a prior criminal trespass on the Grabbert residence. There was other evidence implicating Castle in the crime, which we will review when addressing the sufficiency of the evidence supporting the conviction.

The jury found Castle guilty as charged. During punishment, Castle pleaded true to committing a prior burglary of a habitation. The jury assessed punishment at 25 years' imprisonment, and the district court sentenced Castle accordingly. This appeal followed.

## ANALYSIS

**Admissibility of statements made during telephone conversation**

In his first point of error, Castle asserts that the district court abused its discretion in admitting inculpatory statements made during a telephone conversation between Officer Kyle and someone purporting to be Castle.[1] Castle characterizes the statements made during the conversation as inadmissible hearsay. However, if the person speaking to Kyle was in fact Castle, then what Castle had allegedly said to Kyle would be an admission by a party opponent and would not qualify as hearsay. *See* Tex. R. Evid. 801(e)(2). Thus, as the State observes, the actual issue is

---

[1] These statements included admitting to the burglary, describing the property that had been stolen, and admitting that he did not have permission to enter the home.

2

whether there was sufficient evidence to support a finding by the district court that the person speaking to Kyle was in fact Castle.

The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Tex. R. Evid. 901(a). Telephone conversations may be authenticated through the caller's self-identification or other circumstantial evidence tending to show the identity of the caller. *See* Tex. R. Evid. 901(b)(4); *Earnhart v. State*, 582 S.W.2d 444, 448 (Tex. Crim. App. 1979) ("In admitting the contents of a telephone conversation, the identity of the speaker is sufficiently established if the message reveals that the speaker has knowledge of facts that only the speaker would be likely to know.").

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008). "The sufficiency of the predicate [for admitting evidence] is also within the sound discretion of the trial court." *Davis v. State*, 992 S.W.2d 8, 11 (Tex. Crim. App. 1996). "The trial judge does not abuse his or her discretion in admitting evidence where he or she reasonably believes that a reasonable juror could find that the evidence has been authenticated or identified." *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007). We will not reverse the trial court's decision to admit or exclude evidence unless its ruling lies "outside the zone of reasonable disagreement." *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007).

Kyle admitted that he had not spoken to or met with Castle prior to the telephone conversation and thus could not be certain that it was Castle on the phone. However, Kyle testified

3

that the person with whom he was speaking identified himself as Castle and that he spoke with this person over the phone at least "three or four times" during the investigation. Additionally, Kyle testified that the caller advised him that he still had the stolen property and that he would have his mother return the property to the police department. The following day, consistent with the caller's statements during the telephone conversation, Castle's mother met with Kyle at the police department and returned some of the stolen property, along with a handwritten note purportedly signed by Castle in which he admits to and apologizes for stealing the property.[2] Moreover, Castle's girlfriend, Susan Uden, also met with Kyle and provided information that further led Kyle to believe that the person with whom he had been speaking was Castle. Finally, we observe that there was no contrary evidence presented that the caller was someone other than who he claimed to be. On this record, we cannot conclude that the district court abused its discretion in admitting the evidence.

We overrule Castle's first point of error.

**Notice of extraneous offense**

Officer Brian Platt of the Bastrop Police Department also investigated the burglary and testified at trial. Over objection by Castle, Platt was asked why Castle was an initial suspect in the burglary. Platt answered, "Prior to the incident, based on my investigation, information was obtained that Mr. Castle had a criminal trespass to that residence." In his second point of error,

---

[2] On appeal, Castle does not challenge the authenticity of the handwritten note or otherwise contest its admissibility. We discuss this note in more detail when addressing the sufficiency of the evidence.

Castle claims that the State failed to provide him with adequate notice of its intent to introduce this extraneous offense.

In response, the State first argues that Castle failed to preserve error on this point because the record does not reflect what was said during a bench conference in which defense counsel explained the basis for his objection.[3] However, during a subsequent recess in the proceedings, counsel explained on the record the grounds for his earlier objection:

> For the record, we heard evidence from an Officer Platt today and evidence was admitted, over my 404(b) objection, about a criminal trespass. I want the record to reflect that the defendant filed a request [for] notice on January 15th of this year as required by 404(b) of the Texas Rules of Evidence and the State only tendered notice of two extraneous offenses, neither of which was a criminal trespass. We were entitled to notice under that. . . .

We conclude that Castle preserved error. *See* Tex. R. App. P. 33.1.

Rule 404(b) allows the admission of certain extraneous offenses, provided that "upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial

---

[3] The record reflects the following:

[The State]:      And from your investigation did you learn that there had been a previous criminal trespass—

[Defense counsel]:      Objection, Your Honor. May we approach?

The Court:      All right.

(Brief discussion at the bench and off the record.)

The Court:      The objection is overruled, you may ask that question.

of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction." Tex. R. Evid. 404(b). The rule requires "reasonable" notice. *Hayden v. State*, 66 S.W.3d 269, 272 (Tex. Crim. App. 2001). The reasonableness of the State's notice generally turns on the facts and circumstances of each case. *See Patton v. State*, 25 S.W.3d 387, 392 (Tex. App.—Austin 2000, pet. ref'd). The mere opening of the State's file containing an offense report detailing extraneous offense evidence and indicating that the State is aware of the extraneous offense does not satisfy the requirement of giving notice of the State's "intent to introduce" such evidence. *See Buchanan v. State*, 911 S.W.2d 11, 15 (Tex. Crim. App. 1995). However, the delivery to the defendant of documents such as witness statements detailing extraneous offenses may constitute reasonable notice. *See Hayden*, 66 S.W.3d at 272-73.

We review a trial court's decision to admit extraneous offense evidence for abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005) (citing *Mozon v. State*, 991 S.W.2d 841, 846-47 (Tex. Crim. App. 1999)). A trial court abuses its discretion when its decision "is so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Id*. (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)). Additionally, any error in admitting such evidence is nonconstitutional error subject to a harm analysis under Rule 44.2(b). *See Hernandez v. State*, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005) (citing Tex. R. App. P. 44.2(b)). Thus, we will not reverse the trial court's judgment unless the error had a substantial and injurious effect or influence in determining the jury's verdict. *Id*. (citing *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)). Because the purpose of the Rule 404(b) notice provision is to enable the defendant to prepare to meet the evidence of extraneous

6

offenses, we consider in our harm analysis whether the lack of notice surprised the defendant or adversely affected his trial strategy. *See id*. at 825-26.

In response to Castle's request for notice of intent to introduce extraneous offenses, the prosecutor provided defense counsel with a letter indicating that he would attempt to admit evidence that Castle was a "habitual burglar" and a "drug addict." The letter made no explicit mention of the State's intent to introduce evidence of Castle's prior criminal trespass. However, in the last paragraph of the letter, the prosecutor wrote, "Finally, any item or circumstance that I have not mentioned but which is included in the discovery provided you, or reasonable deductions therefrom, may be sought to be introduced either in the case-in-chief or punishment phase." During trial, the prosecutor stated on the record that in September 2008, several months before trial, he had delivered to Castle numerous discovery documents, including a copy of the offense report which referenced a statement that the Grabberts had reported to authorities that Castle had "criminally trespassed" on their residence, "which in turn caused a lot of tension between the Castles and the Grabberts." Defense counsel did not dispute the prosecutor's contention that the offense report had been previously delivered to him or that it contained the statement concerning the criminal trespass. The district court would not have abused its discretion in finding that the combination of the State's delivery of the offense report to Castle and the above statement in the prosecutor's letter provided reasonable notice to Castle that the State intended to introduce evidence of the prior criminal trespass. *See Hayden*, 66 S.W.3d at 273 & n.15 (explaining that prosecutor is not required to explicitly state intent to introduce extraneous offenses and that State's delivery of documents to defendant referencing extraneous offenses is critical factor to consider in analyzing reasonableness

7

of notice). We cannot conclude that such a finding is so clearly wrong as to lie outside that zone within which reasonable persons might disagree.

However, even if the State had failed to provide reasonable notice, we could not conclude on this record that Castle was harmed. Defense counsel made no claim that he was actually surprised by the evidence, nor did he show how his trial strategy would have been different had the State explicitly mentioned the criminal-trespass offense in its letter. *See McDonald*, 179 S.W.3d at 578-79; *Hernandez*, 176 S.W.3d at 825-26. In light of the fact that the criminal trespass involved the same property and the same property owners as the charged offense, we find it unlikely that Castle was unaware that the State would attempt to admit evidence concerning this extraneous offense during trial. Moreover, Castle has made no claim that the extraneous offense was substantively inadmissible and thus harmful in that regard. *See* Tex. R. Evid. 404(b) ("Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith."). We also observe that the criminal-trespass offense was not a significant part of the State's case. Officer Platt did not elaborate on the circumstances surrounding the alleged offense, and it was mentioned only briefly by the State during its closing argument. Instead, the State emphasized the other evidence connecting Castle to the charged offense, which, as we discuss below, was considerable. In the context of the entire case, we cannot conclude that the alleged failure of the State to provide reasonable notice of the extraneous offense affected Castle's substantial rights. *See Allen v. State*, 202 S.W.3d 364, 369-70 (Tex. App.—Fort Worth 2006, pet. ref'd).

We overrule Castle's second point of error.

**Factual sufficiency**

In his third point of error, Castle asserts that "the properly admitted evidence," which in his view does not include the statements made in the telephone conversation with Officer Kyle discussed above, is factually insufficient to support his conviction for burglary.[4] In his fourth point of error, Castle similarly asserts that the evidence, "while perhaps legally sufficient to support a finding of burglary, given the erroneous admission of hearsay evidence," is nevertheless factually insufficient to support his conviction because, according to Castle, "the evidence was clear that Appellant had permission to enter the home at the time of entry."

In a factual sufficiency review, an appellate court views the evidence in a neutral light to determine whether the jury's verdict of guilt was rationally justified. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *Watson v. State*, 204 S.W.3d 404, 415 (Tex. Crim. App. 2006). Reversal for factual insufficiency occurs only when: (1) the evidence supporting the verdict is so weak the verdict seems clearly wrong and manifestly unjust; or (2) there is some objective basis in the record that shows the

---

[4] As we have already explained, the statements made in the telephone conversation were not inadmissible. Thus, we need not address Castle's contention in his third point of error that only properly admitted evidence may be considered in a factual sufficiency review. We note, however, that the court of criminal appeals has stated that "[t]he legal and factual sufficiency standards both require the reviewing court to consider **all** of the evidence." *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006) (emphasis in original); *see also Berry v. State*, 233 S.W.3d 847, 854 (Tex. Crim. App. 2007) ("Such a factual sufficiency review requires the reviewing court to consider all of the evidence."); *Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007) ("Both legal and factual sufficiency standards require the reviewing court to consider all of the evidence.").

great weight and preponderance of the evidence contradict the jury's verdict. *See Berry v. State*, 233 S.W.3d 847, 854 (Tex. Crim. App. 2007); *Roberts*, 220 S.W.3d at 524; *Watson*, 204 S.W.3d at 417.

A person commits the offense of burglary of a habitation if, without the effective consent of the owner, the person enters a building or habitation and commits or attempts to commit a felony, theft, or an assault. Tex. Penal Code Ann. § 30.02(a)(3). Castle concedes that there is sufficient evidence to prove that he entered the habitation and that he committed theft. However, he challenges the sufficiency of the evidence supporting the element that he entered the habitation "without the effective consent of the owner."

Castle asserts that the only evidence that he actually lacked permission to enter the home is the statement made to Officer Kyle over the telephone in which a person who identified himself as Castle admitted that he did not have permission to enter the residence. We disagree. In addition to the oral statement, the jury also considered a handwritten note allegedly signed by Castle and delivered to the police department by Castle's mother.[5] The note provides:

> I Eric Castle give this statement.
>
> I broke into the Grabberts['] house. I stole money and jewelry. When I did this I was extremely high on meth. I am not asking for forgiveness, just to be understood. I will return all jewelry with this letter as I never intended to take it. It must have been in the wrong box.

At the bottom of the note appears Castle's signature and a date, "4/5/07," which is three days after the burglary allegedly occurred. The jury could have reasonably inferred from the statement,

---

[5] Castle's mother testified that she wrote the note under her son's direction, writing what he told her to write, and that her son signed the note.

"I broke into the Grabberts['] house" that Castle did not have permission to enter the property. Additionally, the jury heard testimony from the owners of the property, James and Janet Grabbert, from which the jury could infer that Castle did not have permission to enter the property at the time of the burglary. James testified that Castle did not have consent to be on the property, and Janet testified that Castle had been told prior to the incident that he was no longer welcome on the property. James further testified that one of the bedrooms from which items had been stolen was locked on the day of the burglary, which the jury could reasonably infer was evidence that, at the very least, Castle did not have permission to enter that room. Moreover, the State presented evidence that the entry into the home and bedroom had been forced. Officer Platt testified that the door into the house from the garage "appeared to have been pried open with a tool" and that the door to the bedroom appeared to have been "possibly kicked or pushed in" using "significant force." Also, according to Platt, the bedroom "was in shambles . . . . drawers were pulled out, the contents of drawers were all over the floor, all over the bed, clothes, numerous credit cards and so forth. There was just a bunch of stuff, all kinds of stuff thrown throughout the room." The jury could have reasonably inferred from the manner of entry and the chaotic condition of the bedroom that Castle's entry was without the effective consent of the owners.

The evidence contrary to the verdict consists of the testimony of Castle's mother, who testified that her son used to reside on the property with his girlfriend; Janet Grabbert, who testified that Castle would sometimes stay at the residence with her granddaughter for extended periods of time; and Castle's girlfriend, Susan Uden, who claimed that she had given consent for Castle to be on the property and that she had never withdrawn that consent. However, although Uden lived at

11

the residence, there is no indication in the record that Uden was a co-owner of the property or that she was legally authorized to act on behalf of the owners. Moreover, on cross-examination, the State attacked Uden's credibility as follows:

> Q:     You testified earlier that Mr. Castle had consent to come in that home; is that correct?
>
> A:     Right.
>
> Q:     That's why he took the hinges off your door and broke the interior door of the home, is it not, because he had consent?
>
> A:     I don't know.
>
> Q:     Is that the way you normally enter your home, instead of using a key you take the hinges off your door and you kick the door in? Is that the way you normally enter your home?
>
> A:     No.
>
> Q:     Is that the way he normally entered your home?
>
> A:     No.
>
> Q:     Okay. The truth is, you would do anything to prevent Eric Castle from being convicted in this case; isn't that true?
>
> A:     Well, of course.

Thus, the jury could have found that Uden was not a credible witness. As for the other evidence tending to show that Castle would sometimes stay at the property with the permission of the Grabberts, the jury could have found that whatever consent Castle may have had in the past to be on the property, at the time of the burglary, the property owners had withdrawn that consent.

12

When considering the above evidence in a neutral light, we cannot say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict or that the verdict is clearly wrong or manifestly unjust. Even were we to disregard the allegedly inadmissible statements made over the telephone to Officer Kyle, we cannot conclude on this record that the evidence is factually insufficient to support the jury's verdict.

We overrule Castle's third and fourth points of error.

## CONCLUSION

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed:   August 25, 2010

Do Not Publish