TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-09-00241-CR






Eric Matthew Castle, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT

NO. 12884, HONORABLE REVA TOWSLEE CORBETT, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 A jury convicted appellant Eric Matthew Castle of the offense of burglary of
a habitation. See Tex. Penal Code Ann. § 30.02(a)(3) (West 2003). Punishment was assessed at
25 years' imprisonment. In four points of error, Castle asserts that the district court abused
its discretion in admitting an alleged telephone conversation between a police officer and someone
purporting to be Castle, that the State failed to provide notice of its intent to introduce an extraneous
offense, and that the evidence is factually insufficient to support the conviction. We will affirm
the judgment.


BACKGROUND

 The jury heard evidence that on April 2, 2007, the Bastrop residence of James and
Janet Grabbert was burglarized and numerous items were stolen. The primary suspect in the burglary
was Castle, the boyfriend of the Grabberts' granddaughter, Susan Uden. Evidence connecting
Castle to the crime included an alleged telephone conversation between Officer Preston Kyle of
the Bastrop Police Department and someone purporting to be Castle. During the conversation,
according to Kyle, this person confessed to committing the burglary. Also admitted into evidence
was testimony tending to show that Castle had committed an extraneous offense, specifically a
prior criminal trespass on the Grabbert residence. There was other evidence implicating Castle in
the crime, which we will review when addressing the sufficiency of the evidence supporting
the conviction.

 The jury found Castle guilty as charged. During punishment, Castle pleaded true
to committing a prior burglary of a habitation. The jury assessed punishment at 25 years'
imprisonment, and the district court sentenced Castle accordingly. This appeal followed.


ANALYSIS

Admissibility of statements made during telephone conversation

 In his first point of error, Castle asserts that the district court abused its discretion
in admitting inculpatory statements made during a telephone conversation between Officer Kyle
and someone purporting to be Castle. (1) Castle characterizes the statements made during the
conversation as inadmissible hearsay. However, if the person speaking to Kyle was in fact Castle,
then what Castle had allegedly said to Kyle would be an admission by a party opponent and would
not qualify as hearsay. See Tex. R. Evid. 801(e)(2). Thus, as the State observes, the actual issue is
whether there was sufficient evidence to support a finding by the district court that the person
speaking to Kyle was in fact Castle. 

 The requirement of authentication or identification as a condition precedent to
admissibility is satisfied by evidence sufficient to support a finding that the matter in question
is what its proponent claims. Tex. R. Evid. 901(a). Telephone conversations may be authenticated
through the caller's self-identification or other circumstantial evidence tending to show the identity
of the caller. See Tex. R. Evid. 901(b)(4); Earnhart v. State, 582 S.W.2d 444, 448 (Tex. Crim. App.
1979) ("In admitting the contents of a telephone conversation, the identity of the speaker is
sufficiently established if the message reveals that the speaker has knowledge of facts that only the
speaker would be likely to know."). 

 We review a trial court's decision to admit or exclude evidence for an abuse
of discretion. Ramos v. State, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008). "The sufficiency
of the predicate [for admitting evidence] is also within the sound discretion of the trial court." Davis
v. State, 992 S.W.2d 8, 11 (Tex. Crim. App. 1996). "The trial judge does not abuse his or her
discretion in admitting evidence where he or she reasonably believes that a reasonable juror could
find that the evidence has been authenticated or identified." Druery v. State, 225 S.W.3d 491, 502
(Tex. Crim. App. 2007). We will not reverse the trial court's decision to admit or exclude evidence 
unless its ruling lies "outside the zone of reasonable disagreement." Walters v. State, 247 S.W.3d
204, 217 (Tex. Crim. App. 2007).

 Kyle admitted that he had not spoken to or met with Castle prior to the telephone
conversation and thus could not be certain that it was Castle on the phone. However, Kyle testified
that the person with whom he was speaking identified himself as Castle and that he spoke with this
person over the phone at least "three or four times" during the investigation. Additionally, Kyle
testified that the caller advised him that he still had the stolen property and that he would have his
mother return the property to the police department. The following day, consistent with the caller's
statements during the telephone conversation, Castle's mother met with Kyle at the police
department and returned some of the stolen property, along with a handwritten note purportedly
signed by Castle in which he admits to and apologizes for stealing the property. (2) Moreover, Castle's
girlfriend, Susan Uden, also met with Kyle and provided information that further led Kyle to believe
that the person with whom he had been speaking was Castle. Finally, we observe that there was no
contrary evidence presented that the caller was someone other than who he claimed to be. On this
record, we cannot conclude that the district court abused its discretion in admitting the evidence.

 We overrule Castle's first point of error.


Notice of extraneous offense

 Officer Brian Platt of the Bastrop Police Department also investigated the burglary
and testified at trial. Over objection by Castle, Platt was asked why Castle was an initial suspect
in the burglary. Platt answered, "Prior to the incident, based on my investigation, information
was obtained that Mr. Castle had a criminal trespass to that residence." In his second point of error,
Castle claims that the State failed to provide him with adequate notice of its intent to introduce this
extraneous offense.

 In response, the State first argues that Castle failed to preserve error on this
point because the record does not reflect what was said during a bench conference in which
defense counsel explained the basis for his objection. (3)
 However, during a subsequent recess in the
proceedings, counsel explained on the record the grounds for his earlier objection:


For the record, we heard evidence from an Officer Platt today and evidence was
admitted, over my 404(b) objection, about a criminal trespass. I want the record to
reflect that the defendant filed a request [for] notice on January 15th of this year as
required by 404(b) of the Texas Rules of Evidence and the State only tendered notice
of two extraneous offenses, neither of which was a criminal trespass. We were
entitled to notice under that. . . .



We conclude that Castle preserved error. See Tex. R. App. P. 33.1.

 Rule 404(b) allows the admission of certain extraneous offenses, provided that "upon
timely request by the accused in a criminal case, reasonable notice is given in advance of trial
of intent to introduce in the State's case-in-chief such evidence other than that arising in the
same transaction." Tex. R. Evid. 404(b). The rule requires "reasonable" notice. Hayden v. State,
66 S.W.3d 269, 272 (Tex. Crim. App. 2001). The reasonableness of the State's notice generally
turns on the facts and circumstances of each case. See Patton v. State, 25 S.W.3d 387, 392
(Tex. App.--Austin 2000, pet. ref'd). The mere opening of the State's file containing an offense
report detailing extraneous offense evidence and indicating that the State is aware of the extraneous
offense does not satisfy the requirement of giving notice of the State's "intent to introduce" such
evidence. See Buchanan v. State, 911 S.W.2d 11, 15 (Tex. Crim. App. 1995). However, the
delivery to the defendant of documents such as witness statements detailing extraneous offenses may
constitute reasonable notice. See Hayden, 66 S.W.3d at 272-73.

 We review a trial court's decision to admit extraneous offense evidence for abuse of
discretion. McDonald v. State, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005) (citing Mozon v. State,
991 S.W.2d 841, 846-47 (Tex. Crim. App. 1999)). A trial court abuses its discretion when its
decision "is so clearly wrong as to lie outside that zone within which reasonable persons might
disagree." Id. (citing Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on
reh'g)). Additionally, any error in admitting such evidence is nonconstitutional error subject to a
harm analysis under Rule 44.2(b). See Hernandez v. State, 176 S.W.3d 821, 824 (Tex. Crim. App.
2005) (citing Tex. R. App. P. 44.2(b)). Thus, we will not reverse the trial court's judgment unless
the error had a substantial and injurious effect or influence in determining the jury's verdict. Id.
(citing King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)). Because the purpose of the
Rule 404(b) notice provision is to enable the defendant to prepare to meet the evidence of extraneous
offenses, we consider in our harm analysis whether the lack of notice surprised the defendant or
adversely affected his trial strategy. See id. at 825-26.

 In response to Castle's request for notice of intent to introduce extraneous offenses,
the prosecutor provided defense counsel with a letter indicating that he would attempt to
admit evidence that Castle was a "habitual burglar" and a "drug addict." The letter made no explicit
mention of the State's intent to introduce evidence of Castle's prior criminal trespass. However, in
the last paragraph of the letter, the prosecutor wrote, "Finally, any item or circumstance that I have
not mentioned but which is included in the discovery provided you, or reasonable deductions
therefrom, may be sought to be introduced either in the case-in-chief or punishment phase." During
trial, the prosecutor stated on the record that in September 2008, several months before trial, he had
delivered to Castle numerous discovery documents, including a copy of the offense report which
referenced a statement that the Grabberts had reported to authorities that Castle had "criminally
trespassed" on their residence, "which in turn caused a lot of tension between the Castles and
the Grabberts." Defense counsel did not dispute the prosecutor's contention that the offense report
had been previously delivered to him or that it contained the statement concerning the criminal
trespass. The district court would not have abused its discretion in finding that the combination of
the State's delivery of the offense report to Castle and the above statement in the prosecutor's letter
provided reasonable notice to Castle that the State intended to introduce evidence of the prior
criminal trespass. See Hayden, 66 S.W.3d at 273 & n.15 (explaining that prosecutor is not required
to explicitly state intent to introduce extraneous offenses and that State's delivery of documents to
defendant referencing extraneous offenses is critical factor to consider in analyzing reasonableness
of notice). We cannot conclude that such a finding is so clearly wrong as to lie outside that zone
within which reasonable persons might disagree.

 However, even if the State had failed to provide reasonable notice, we could not
conclude on this record that Castle was harmed. Defense counsel made no claim that he was actually
surprised by the evidence, nor did he show how his trial strategy would have been different had
the State explicitly mentioned the criminal-trespass offense in its letter. See McDonald, 179 S.W.3d
at 578-79; Hernandez, 176 S.W.3d at 825-26. In light of the fact that the criminal trespass involved
the same property and the same property owners as the charged offense, we find it unlikely that
Castle was unaware that the State would attempt to admit evidence concerning this extraneous
offense during trial. Moreover, Castle has made no claim that the extraneous offense was
substantively inadmissible and thus harmful in that regard. See Tex. R. Evid. 404(b) ("Evidence of
other crimes, wrongs or acts is not admissible to prove the character of a person in order to show
action in conformity therewith."). We also observe that the criminal-trespass offense was not a
significant part of the State's case. Officer Platt did not elaborate on the circumstances surrounding
the alleged offense, and it was mentioned only briefly by the State during its closing argument.
Instead, the State emphasized the other evidence connecting Castle to the charged offense, which,
as we discuss below, was considerable. In the context of the entire case, we cannot conclude that
the alleged failure of the State to provide reasonable notice of the extraneous offense affected
Castle's substantial rights. See Allen v. State, 202 S.W.3d 364, 369-70 (Tex. App.--Fort Worth
2006, pet. ref'd).

 We overrule Castle's second point of error.

Factual sufficiency

 In his third point of error, Castle asserts that "the properly admitted evidence," which
in his view does not include the statements made in the telephone conversation with Officer Kyle
discussed above, is factually insufficient to support his conviction for burglary. (4)
 In his fourth point
of error, Castle similarly asserts that the evidence, "while perhaps legally sufficient to support a
finding of burglary, given the erroneous admission of hearsay evidence," is nevertheless factually
insufficient to support his conviction because, according to Castle, "the evidence was clear that
Appellant had permission to enter the home at the time of entry."

 In a factual sufficiency review, an appellate court views the evidence in a neutral light
to determine whether the jury's verdict of guilt was rationally justified. See Lancon v. State,
253 S.W.3d 699, 705 (Tex. Crim. App. 2008); Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim.
App. 2007); Watson v. State, 204 S.W.3d 404, 415 (Tex. Crim. App. 2006). Reversal for factual
insufficiency occurs only when: (1) the evidence supporting the verdict is so weak the verdict seems
clearly wrong and manifestly unjust; or (2) there is some objective basis in the record that shows the
great weight and preponderance of the evidence contradict the jury's verdict. See Berry v. State, 233
S.W.3d 847, 854 (Tex. Crim. App. 2007); Roberts, 220 S.W.3d at 524; Watson, 204 S.W.3d at 417.

 A person commits the offense of burglary of a habitation if, without the effective
consent of the owner, the person enters a building or habitation and commits or attempts to commit
a felony, theft, or an assault. Tex. Penal Code Ann. § 30.02(a)(3). Castle concedes that there is
sufficient evidence to prove that he entered the habitation and that he committed theft. However,
he challenges the sufficiency of the evidence supporting the element that he entered the habitation
"without the effective consent of the owner."

 Castle asserts that the only evidence that he actually lacked permission to enter the
home is the statement made to Officer Kyle over the telephone in which a person who identified
himself as Castle admitted that he did not have permission to enter the residence. We disagree. In
addition to the oral statement, the jury also considered a handwritten note allegedly signed by Castle
and delivered to the police department by Castle's mother. (5) The note provides:


I Eric Castle give this statement.


I broke into the Grabberts['] house. I stole money and jewelry. When I did this I
was extremely high on meth. I am not asking for forgiveness, just to be understood.
I will return all jewelry with this letter as I never intended to take it. It must have
been in the wrong box.



At the bottom of the note appears Castle's signature and a date, "4/5/07," which is three days
after the burglary allegedly occurred. The jury could have reasonably inferred from the statement,
"I broke into the Grabberts['] house" that Castle did not have permission to enter the property.
Additionally, the jury heard testimony from the owners of the property, James and Janet Grabbert,
from which the jury could infer that Castle did not have permission to enter the property at the
time of the burglary. James testified that Castle did not have consent to be on the property, and
Janet testified that Castle had been told prior to the incident that he was no longer welcome on
the property. James further testified that one of the bedrooms from which items had been stolen
was locked on the day of the burglary, which the jury could reasonably infer was evidence that, at
the very least, Castle did not have permission to enter that room. Moreover, the State presented
evidence that the entry into the home and bedroom had been forced. Officer Platt testified that the
door into the house from the garage "appeared to have been pried open with a tool" and that the door
to the bedroom appeared to have been "possibly kicked or pushed in" using "significant force." 
Also, according to Platt, the bedroom "was in shambles . . . . drawers were pulled out, the contents
of drawers were all over the floor, all over the bed, clothes, numerous credit cards and so forth. 
There was just a bunch of stuff, all kinds of stuff thrown throughout the room." The jury could have
reasonably inferred from the manner of entry and the chaotic condition of the bedroom that Castle's
entry was without the effective consent of the owners.

 The evidence contrary to the verdict consists of the testimony of Castle's mother, who
testified that her son used to reside on the property with his girlfriend; Janet Grabbert, who testified
that Castle would sometimes stay at the residence with her granddaughter for extended periods of
time; and Castle's girlfriend, Susan Uden, who claimed that she had given consent for Castle to be
on the property and that she had never withdrawn that consent. However, although Uden lived at
the residence, there is no indication in the record that Uden was a co-owner of the property or that
she was legally authorized to act on behalf of the owners. Moreover, on cross-examination, the State
attacked Uden's credibility as follows:


Q: You testified earlier that Mr. Castle had consent to come in that home; is that
correct?


A: Right.


Q: That's why he took the hinges off your door and broke the interior door of the
home, is it not, because he had consent?


A: I don't know.


Q: Is that the way you normally enter your home, instead of using a key you take
the hinges off your door and you kick the door in? Is that the way you
normally enter your home?


A: No.


Q: Is that the way he normally entered your home?


A: No.


Q: Okay. The truth is, you would do anything to prevent Eric Castle from being
convicted in this case; isn't that true?


A: Well, of course.



Thus, the jury could have found that Uden was not a credible witness. As for the other evidence
tending to show that Castle would sometimes stay at the property with the permission of the
Grabberts, the jury could have found that whatever consent Castle may have had in the past to be on
the property, at the time of the burglary, the property owners had withdrawn that consent.

 When considering the above evidence in a neutral light, we cannot say, with some
objective basis in the record, that the great weight and preponderance of the evidence contradicts
the jury's verdict or that the verdict is clearly wrong or manifestly unjust. Even were we to disregard
the allegedly inadmissible statements made over the telephone to Officer Kyle, we cannot conclude
on this record that the evidence is factually insufficient to support the jury's verdict.

 We overrule Castle's third and fourth points of error.


CONCLUSION

 We affirm the judgment of the district court.



 __________________________________________

 Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed: August 25, 2010

Do Not Publish
1. These statements included admitting to the burglary, describing the property that had been
stolen, and admitting that he did not have permission to enter the home.
2. On appeal, Castle does not challenge the authenticity of the handwritten note or otherwise
contest its admissibility. We discuss this note in more detail when addressing the sufficiency of
the evidence.
3. The record reflects the following:


[The State]: And from your investigation did you learn that there had been
a previous criminal trespass--


[Defense counsel]: Objection, Your Honor. May we approach?


The Court: All right.


(Brief discussion at the bench and off the record.)


The Court: The objection is overruled, you may ask that question. 

4. As we have already explained, the statements made in the telephone conversation were
not inadmissible. Thus, we need not address Castle's contention in his third point of error that only
properly admitted evidence may be considered in a factual sufficiency review. We note, however,
that the court of criminal appeals has stated that "[t]he legal and factual sufficiency standards both
require the reviewing court to consider all of the evidence." Marshall v. State, 210 S.W.3d 618,
625 (Tex. Crim. App. 2006) (emphasis in original); see also Berry v. State, 233 S.W.3d 847, 854
(Tex. Crim. App. 2007) ("Such a factual sufficiency review requires the reviewing court to consider
all of the evidence."); Rollerson v. State, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007) ("Both legal
and factual sufficiency standards require the reviewing court to consider all of the evidence.").

5. Castle's mother testified that she wrote the note under her son's direction, writing what he
told her to write, and that her son signed the note.