TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00266-CR






Adam Renee Castro, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT

NO. 35499, HONORABLE LLOYD DOUGLAS SHAVER, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 A jury convicted Adam Renee Castro of aggravated sexual assault of a child, see Tex.
Penal Code Ann. § 22.021 (West 2011), and assessed punishment at ninety years in prison and a
$10,000 fine. Castro raises two issues on appeal, asserting that the trial court erred in (1) submitting
a jury charge allowing the jury to convict him of aggravated sexual assault of a child and
(2) admitting extraneous-offense evidence during trial. Because we conclude that the trial court did
not err in either determination, we affirm the trial court's judgment.


BACKGROUND

 According to the trial record, the event that gave rise to Castro's conviction for
aggravated sexual assault of a child occurred on June 14, 2008, in Marble Falls. On that day, Castro
was with his girlfriend, Tessa Gonzalez ("Tessa"), and her extended family at a motel. Castro and
Tessa had traveled to Marble Falls for Tessa's family reunion. After going out to dinner in
Marble Falls that evening, Tessa's family returned to the motel and gathered in the parking lot to
socialize. Several young children were among the family members who were gathered, including
the victim, who was nine years old at the time. The victim was Tessa's niece and had known Castro
since she was about four years old. On the night of June 14, while the family was gathered, the
victim wanted to go to her family's motel room to get an iPod, and she asked her mother for the
room key in order to do so. Her mother gave her the key, and she left for the room. At the time,
Castro was with Tessa. Tessa testified that when the victim left to go to the room, Castro said, "I'll
go with her," and left.

 The victim testified that there were two doors going into the motel room. She
testified that when she opened one of the doors and walked into the room, she noticed that the door
did not shut behind her. When she turned around, she saw Castro standing there. The victim
testified that Castro had "pulled down his pants" and that she saw his "private." The victim testified
that she started walking backwards and asked, "What are you doing?" She testified that Castro said,
"Come here" twice, and she refused both times. She tried to roll over the bed to get to the other
door, but he grabbed her foot and pulled her toward him. She testified that she pushed him away and
threw a phone at him, but he kept grabbing her. She testified that he pulled her toward him on the
bed, pulled down her pants, and got on top of her. She tried to pull her pants up several times, but
he pulled them back down. She testified that he then put his "private" in her "back private." At
some point, the victim's aunt began knocking on the door, and Castro got up and left the room. 
After Castro left, the victim pulled her pants up and went to the bathroom. She then left the room. 
She testified that she did not immediately tell anyone what happened but did so later that evening,
when she told Tessa and her mother. The victim's mother testified that upon learning what
happened, she looked at the victim's legs and saw red marks between her legs. The victim's mother
then called the police. Castro was later arrested.

 During the trial, evidence of Castro's extraneous misconduct toward the victim was
admitted over Castro's objection. The evidence showed that in the years before the June 2008
incident, the victim had spent considerable time around Castro. Castro and Tessa had lived across
the street from her and in the same home with her at different time periods. The victim testified that
during the time she was living in close proximity to Castro and Tessa, Castro acted in a sexual
manner toward her on several occasions. She testified that Castro put her on his lap and moved her
back and forth on his "private area" and that he did this many different times. The victim testified
that on other occasions, Castro pulled down his pants, asked her to kiss his "private," and put his
finger inside her "private area." She testified that she did not tell Tessa what happened at the time
because she was afraid Tessa would not believe her and would hate her. She testified that she was
also afraid that Castro would hurt her if she told anyone.

 Also admitted at trial over Castro's objection was the testimony of the lead
investigator in the case, Thomas Dillard, regarding the way "grooming" is used by child predators
to gradually move from somewhat-passive sexual acts to more aggressive or frank sexual acts so that
the victim would be less likely to object and the predator would be less likely to get caught. Dillard
testified that Castro used "grooming" with the victim in this case.

 In a three-count indictment, Castro was charged with three offenses, all occurring on
June 14, 2008: indecency with a child by exposure (count one), aggravated sexual assault of a child
by penetrating the child's anus (count two), and aggravated sexual assault of a child by penetration
of the child's sexual organ (count three). When Castro was arraigned in front of the jury before trial
began, he pleaded guilty to count one and not guilty to counts two and three. The trial court
proceeded to trial on counts two and three. The State later abandoned count three. At the charge
conference, Castro argued for the first time that the State could not submit a charge allowing the jury
to convict him of assault by penetration of the child's anus (count two) because he had pleaded guilty
to the indecency by exposure charge (count one), which he asserted was subsumed by the assault
charge. Castro contended that he could not be convicted of both the exposure charge and the assault
charge because they were both part of the same offense.

 After considering the arguments of both parties, the trial court instructed the jury that
it could find Castro guilty of one of the two counts but not both. The jury found Castro guilty of
sexually assaulting the victim by penetration and not guilty of indecency by exposure. The jury then
assessed punishment at ninety years in prison and a $10,000 fine. This appeal followed.


DISCUSSION

 On appeal, Castro raises two issues, asserting that the trial court erred in
(1) submitting a jury charge allowing the jury to convict him of aggravated sexual assault and
(2) admitting the victim's testimony regarding previous extraneous offenses committed against her
by Castro. We address each issue below.





Jury Charge

 Castro argues that the trial court erred in submitting the aggravated sexual assault
charge to the jury because the State was barred from prosecuting him for the charge as soon as he
pleaded guilty to indecency by exposure. He contends that he could not be convicted of both
exposure and aggravated sexual assault because the exposure of his penis occurred during the course
of the alleged aggravated sexual assault and was therefore subsumed by the assault. See Patterson
v. State, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004) (holding that exposure conviction could not
stand because exposure was "incident to and subsumed by" aggravated sexual assault of victim
by penetration).

 When a party claims that there is a jury-charge error, the first step is to determine
whether there is indeed error in the charge. Barrios v. State, 283 S.W.3d 348, 350 (Tex. Crim. App.
2009). Then, if there was error and the appellant objected to the error at trial, we must reverse if the
error is calculated to injure the rights of the defendant. Id. In other words, we must reverse if the
error has caused "some harm" to the defendant. Id. We use an abuse of discretion standard in
reviewing a trial court's decision to submit or refuse a jury instruction. Shupe v. Lingafelter,
192 S.W.3d 577, 579 (Tex. 2006). A trial court abuses its discretion if it acts arbitrarily or
unreasonably or without reference to guiding rules and principles. Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).

 The State does not dispute that the exposure was subsumed by the assault. Although
we believe this is a close question in this case, we need not decide the issue because even assuming
that the exposure was subsumed by the assault, Castro cannot prevail on this issue because the trial
court's acceptance of a guilty plea to a lesser offense does not bar prosecution for the greater offense. 
See Kham v. State, 689 S.W.2d 324, 326 (Tex. App.--Fort Worth 1985, pet. ref'd) (citing Ohio
v. Johnson, 467 U.S. 493, 501 (1984)). It is well settled that the right of election belongs to the State
and not the defendant, and the State is entitled to submit the more serious offense to the jury. Id. at
327; Reseburg v. State, 656 S.W.2d 84, 87 (Tex. App.--Tyler 1983, pet. ref'd). A defendant cannot
force an election by pleading guilty to a lesser offense. (1) See Kham, 689 S.W.2d at 327; Decker v.
State, 734 S.W.2d 393, 394 (Tex. App.--Houston [1st Dist.] 1987, pet. ref'd).

 Further, error would have occurred under Patterson only if the trial court had allowed
the jury to convict Castro of both offenses. The trial court did not do so here. Here, the jury charge
included one instruction on the exposure charge and another instruction on the assault charge and
then stated in boldface type, "You are instructed that you can find the defendant guilty only on one
count." The jury found Castro guilty of the assault and not guilty of the exposure. Thus, there was
no error under Patterson because the charge permitted the jury to convict Castro of only one
offense. (2) See Patterson, 152 S.W.3d at 89, 92 (remedy for error in submitting exposure and assault
charges to jury when exposure was subsumed by assault was reversal of conviction for exposure);
Crocker v. State, 573 S.W.2d 190, 197-98 (Tex. Crim. App. 1978) (no error when two counts arising
out of same transaction were submitted to jury in conditional manner, allowing jury to return guilty
verdict on one count only).

 Because we conclude that there was no error in the jury charge and that the trial court
therefore did not abuse its discretion in submitting the charge to the jury, we overrule Castro's
first issue.

Extraneous-Offense Evidence

 In his second issue, Castro asserts that the trial court erred in admitting evidence
concerning extraneous offenses committed by him against the victim. The evidence referenced by
Castro was admitted through the testimony of the victim, who testified that in the years before the
June 2008 assault, Castro had shown her his "private," put her on his lap and moved her back and
forth on his "private area," put his finger into her "private area," and tried to make her kiss his
"private." The victim testified that she did not tell her aunt what was happening at the time because
she thought her aunt would not believe her and would hate her, and she thought Castro would hurt
her if she told anyone. At trial, Castro objected to the testimony under Rule 403 of the rules of
evidence, arguing that the probative value of the evidence was substantially outweighed by the
danger of unfair prejudice. See Tex. R. Evid. 403. The State argued that the evidence should be
admitted because it showed that Castro had been grooming the victim before the June 2008 assault
and because it helped explain why the victim did not make an immediate outcry. The State also
argued that the trial court should admit the testimony because the evidence "put [the June 2008
incident] in the proper context" and showed that Castro's contact with the victim in June 2008
was not a mistake or accident. After hearing the parties' arguments, the trial court admitted
the testimony.

 We review trial court rulings on the admissibility of evidence for abuse of discretion. 
Carrasco v. State, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). A trial court abuses its
discretion in an admissibility ruling when its ruling is arbitrary or unreasonable. State v. Mechler,
153 S.W.3d 435, 439 (Tex. Crim. App. 2005). A trial court does not abuse its discretion if its
decision is within "the zone of reasonable disagreement." Bigon v. State, 252 S.W.3d 360, 367 (Tex.
Crim. App. 2008).

 On appeal, Castro reiterates his arguments from the trial court, contending that the
extraneous-offense evidence was not probative of whether the June 2008 assault occurred and that
any probative value of the evidence was substantially outweighed by the danger of unfair prejudice. 
The State counters by arguing that the extraneous-offense evidence was admissible pursuant to
article 38.37 of the code of criminal procedure. See Tex. Code Crim. Proc. Ann. art. 38.37, § 2
(West Supp. 2010). Article 38.37 states, in relevant part:


 Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other
crimes, wrongs, or acts committed by the defendant against the child who is the
victim of the alleged offense shall be admitted for its bearing on relevant matters,
including:


 (1) the state of mind of the defendant and the child; and


 (2) the previous and subsequent relationship between the defendant and
the child.



Id. In cases in which article 38.37 applies, it supersedes rule 404 of the rules of evidence, which
states that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a
person in order to show action in conformity therewith." See Tex. R. Evid. 404(b); DeLeon v. State,
77 S.W.3d 300, 311 n.4 (Tex. App.--Austin 2001, pet. ref'd). Even when evidence is relevant under
article 38.37, however, the trial court is still required to conduct a rule 403 balancing test if the
defendant makes a proper objection, as Castro did here. Hitt v. State, 53 S.W.3d 697, 706 (Tex.
App.--Austin 2001, pet. ref'd). Accordingly, we will consider the admissibility of the evidence
under both article 38.37 and rule 403.


 A. Article 38.37

 Castro contends that the extraneous-offense evidence was irrelevant because it did
not have any tendency to make the commission of the alleged assault any more or less probable. 
However, the evidence was relevant under article 38.37 to show the relationship between Castro and
the victim and their respective states of mind. See Tex. Code Crim. Proc. Ann. art. 38.37, § 2. The
evidence showed a pattern of behavior on the part of Castro that was consistent with the concept of
"grooming," which was described in the lead investigator's testimony as a strategy used by child
predators to gradually move from somewhat-passive sexual acts to more aggressive or frank sexual
acts so that the victim would be less likely to object and the predator would be less likely to get
caught. Evidence of the series of extraneous acts committed by Castro against the victim before the
June 2008 assault falls squarely within the type of evidence allowed under article 38.37. In addition,
the evidence was also relevant to explain why the victim did not make a prompt outcry in the initial
moments after the assault. See Brown v. State, 657 S.W.2d 117, 119 (Tex. Crim. App. 1983);
Isenhower v. State, 261 S.W.3d 168, 179 (Tex. App.--Houston [14th Dist.] 2008, no pet.).


 B. Rule 403

 Castro also argues that the trial court erred in overruling his rule 403 objection to the
extraneous-offense evidence because the probative value of the evidence was substantially
outweighed by the danger of unfair prejudice. (3) See Tex. R. Evid. 403. The trial court is given wide
latitude in weighing the concerns of unfair prejudice under Rule 403. See Mozon v. State,
991 S.W.2d 841, 846-47 (Tex. Crim. App. 1999); Montgomery v. State, 810 S.W.2d 372, 391-92
(Tex. Crim. App. 1991) (op. on reh'g). In reviewing the trial court's balancing test determination
under rule 403, we presume that the probative value of the evidence outweighs any prejudicial effect. 
Montgomery, 810 S.W.2d at 391. We reverse the trial court's ruling "rarely and only after a clear
abuse of discretion." Mozon, 991 S.W.2d at 847 (quoting Montgomery, 810 S.W.2d at 392).

 The relevant factors in determining whether the prejudice of an extraneous offense
substantially outweighs its probative value include: (1) how compellingly the extraneous-offense
evidence serves to make a fact of consequence more or less probable--a factor that is related to the
strength of the evidence presented by the proponent to show the defendant in fact committed the
extraneous offense; (2) the potential the other offense evidence has to impress the jury "in some
irrational but nevertheless indelible way"; (3) the time the proponent will need to develop the
evidence, during which the jury will be distracted from consideration of the indicted offense; and
(4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e., whether
the proponent has other probative evidence available to him to help establish this fact, and whether
this fact is related to an issue in dispute. Id.

 Here, the first factor weighs in favor of admitting the extraneous-offense evidence
because the evidence was probative of the relationship between Castro and the victim, increased the
probability that Castro would have felt emboldened enough to assault the victim in June 2008, and
helped explain why there was a slight delay in the victim's outcry. The second and third factors also
weigh in favor of admission of the evidence because the victim's testimony about the June 2008
assault was more graphic and time-consuming than the evidence of the extraneous acts, thus likely
overshadowing any inflammatory response the jury may have had to testimony about the extraneous
acts. The testimony about the assault comprised six pages of the trial record, whereas the testimony
about all of the extraneous acts combined comprised only three pages of the record. The fourth
factor also weighs in favor of admission of the evidence because the State had no other evidence that
could similarly illustrate the relationship between Castro and the victim, the states of mind of Castro
and the victim, and the reason why the victim did not immediately tell someone about the assault in
the moments after it occurred.


 C. Conclusion Regarding Extraneous-Offense Evidence 

 Based on article 38.37 of the code of criminal procedure and rule 403 of the rules of
evidence, we conclude that the trial court did not abuse its discretion in admitting the extraneous-offense evidence. Tex. Code Crim. Proc. Ann. art. 38.37, § 2; Tex. R. Evid. 403; Mozon, 991
S.W.2d at 847. Accordingly, we overrule Castro's second issue.


CONCLUSION

 Because we find no error in the trial court's determinations, we affirm the trial
court's judgment.



 _____________________________________

 Diane M. Henson, Justice 

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed: August 26, 2011

Do Not Publish

1. Castro contends that a subsumed act under Patterson is not equivalent to a "lesser included"
offense under Kham. However, he does not cite, and we have not found, any legal authority for that
proposition. To the contrary, indecency by exposure in the course of an aggravated sexual assault
is considered a lesser included offense of the assault. See Hutchins v. State, 992 S.W.2d 629, 632
(Tex. App.--Austin 1999, pet. ref'd).
2. Castro also argues that the trial court was required to immediately hold a punishment
hearing on the exposure offense as soon as he pleaded guilty to it. See Tex. Code Crim. Proc. Ann.
art. 26.14 (West 2009) ("Where a defendant in a case of felony persists in pleading guilty . . . a jury
shall be impaneled to assess the punishment and evidence may be heard to enable them to decide
thereupon . . . ."). However, we need not address the issue because we have already determined that
a plea of guilty to the exposure did not preclude the State from proceeding to trial on the assault.


 Even if we were required to address the issue, Castro has not cited, and we have not found,
any authority for the proposition that a trial court must proceed immediately to a punishment hearing
after a defendant pleads guilty to a felony charge rather than first proceeding to trial on other
offenses. Article 26.14 of the code of criminal procedure states only that "a jury shall be impaneled
to assess the punishment . . . ." It does not require that the trial court do so within a certain period
of time.


 We further note that even if the trial court had proceeded directly to a punishment hearing
on the exposure charge when Castro pleaded guilty, all of the evidence regarding the assault would
still have been admissible in the punishment hearing. See Tex. Code Crim. Proc. Ann. art.
37.07(3)(a)(1) (West Supp. 2010). Article 37.07(3)(a)(1) states:


 Regardless of the plea and whether the punishment be assessed by the judge or the
jury, evidence may be offered by the state and the defendant as to any matter the
court deems relevant to sentencing, including but not limited to the prior criminal
record of the defendant, his general reputation, his character, an opinion regarding
his character, the circumstances of the offense for which he is being tried, and,
notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of
an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence
to have been committed by the defendant or for which he could be held criminally
responsible, regardless of whether he has previously been charged with or finally
convicted of the crime or act.


Id. Based on article 37.07(3)(a)(1), the trial court could have admitted at a punishment hearing on
the exposure offense all of the same evidence that was admitted at the trial on the assault, including
the testimony of the victim, the victim's mother, the nurse who examined the victim after the assault,
and the DNA analyst who examined DNA samples collected from the victim.
3. Castro also asserts that the trial court erred in failing to conduct a Rule 403 balancing test
on the record before overruling his objection. However, Rule 403 does not require that the balancing
test be performed on the record. Poole v. State, 974 S.W.2d 892, 897 (Tex. App.--Austin 1998, pet.
ref'd); Yates v. State, 941 S.W.2d 357, 367 (Tex. App.--Waco 1997, pet. ref'd). In overruling a
Rule 403 objection, the trial court is assumed to have applied a rule 403 balancing test and
determined the evidence was admissible. Poole, 974 S.W.2d at 897; Yates, 941 S.W.2d at 367.