**Affirm and Opinion Filed October 9, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-22-00520-CR

### JOSEPH MICHAEL MARRA, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-84582-2018**

## MEMORANDUM OPINION
Before Justices Molberg, Pedersen, III, and Nowell
Opinion by Justice Molberg

A jury convicted appellant Joseph Michael Marra of continuous sexual abuse

of a child under fourteen years of age and sentenced him to twenty-five years'

confinement in the Texas Department of Criminal Justice's Institutional Division.

*See* TEX. PENAL CODE § 21.02.[1]  G.M., the complainant, is Marra's younger half-

---

[1] Section 21.02(b) states:

(b)  A person commits an offense if:

(1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

sister and testified at trial. L.M., another of Marra's younger half-sisters,[2] also testified at trial, including about alleged extraneous acts of sexual abuse against her by Marra before Marra was seventeen years old. Marra objected to L.M.'s testimony on rule 403 grounds[3] during an article 38.37 hearing,[4] but the trial court overruled Marra's objection and allowed L.M. to testify about the extraneous acts.

On appeal, Marra argues the trial court abused its discretion in overruling his rule 403 objection to L.M.'s testimony and argues the evidence was legally insufficient to support his conviction. We disagree and affirm the trial court's judgment in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

## ISSUES AND ANALYSIS

### A.    Evidentiary Sufficiency

In his first issue, Marra agrees "[t]he State presented a long history of abuse between children," but argues we should reverse and render a judgment of acquittal

---

> (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is:

> (A) a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense; or

> (B) a disabled individual.

TEX. PENAL CODE § 21.02(b). For purposes of § 21.02, "[c]hild" has the meaning assigned by Penal Code § 22.011(c), *see id*. § 21.02(a)(1), and "act of sexual abuse" means any act that is a violation of one or more specified penal laws, including aggravated sexual assault under Penal Code § 22.021. *See id*. § 21.02(c)(4).

[2] G.M., L.M., and Marra all share the same father.

[3] *See* TEX. R. EVID. 403.

[4] *See* TEX. CODE CRIM. PROC. art. 38.37, § 2-a (stating that before evidence described by art. 38.37, § 2 may be introduced, the trial judge must "(1) determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt; and (2) conduct a hearing out of the presence of the jury for that purpose").

based on what he describes as "evidence insufficient to establish any *adult* offense, whatsoever." Specifically, Marra argues his conviction is based on impermissible jury speculation, not legally sufficient evidence, regarding his commission of two or more acts of sexual abuse against G.M. during a period thirty days or more in duration when Marra was seventeen years of age or older.[5] As support, he cites *Witcher v. State*, 638 S.W.3d 707 (Tex. Crim. App. 2022) and *Griffith v. State*, No. PD-0639-18, 2019 WL 1486926 (Tex. Crim. App. Apr. 3, 2019) (not designated for publication).[6]

The State, in contrast, argues legally sufficient evidence supports the conviction because the jury could have reasonably inferred from the evidence that seventeen-year-old Marra committed two acts of sexual abuse against G.M. that were separated by thirty or more days. In addition to discussing *Witcher* and *Griffith*, the State cites other cases not addressed by Marra, including, but not limited to, *Edwards v. State*, 666 S.W.3d 571 (Tex. Crim. App. 2023); *Lehman v. State*, No. 05-19-01367-CR, 2022 WL 2155061 (Tex. App.—Dallas June 15, 2022, no pet.) (not designated for publication); *Flanagin v. State*, No. 05-19-00858-CR, 2021 WL 2253502 (Tex. App.—Dallas June 3, 2021, no pet.) (not designated for publication); and *Auld v. State*, 652 S.W.3d 95 (Tex. App.—Texarkana 2022, no pet.).

---

[5] It is undisputed G.M. was under fourteen years of age throughout Marra's alleged sexual abuse of her.

[6] *See* TEX. R. APP. P. 77.3 ("Unpublished opinions have no precedential value and must not be cited as authority by counsel or by a court."). In light of this rule, we do not further discuss *Griffith*, except to note that its conclusion regarding evidentiary sufficiency appears to result from the axiom that "[a] jury cannot make inferences based on evidence that they never heard." *See Griffith*, 2019 WL 1486926, at *5.

The standards we apply in examining evidentiary sufficiency are well known. As the Texas Court of Criminal Appeals recently stated,

> Evidence is legally sufficient to support a conviction if "any rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). A reviewing court must consider the evidence in the light most favorable to the verdict without reweighing the evidence, substituting its own judgment for that of the jury, or acting as a thirteenth juror. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

*McPherson v. State*, No. PD-0635-22, 2023 WL 6280118, at *1 (Tex. Crim. App. Sept. 27, 2023). And, as the United States Supreme Court explained:

> Sufficiency review essentially addresses whether "the government's case was so lacking that it should not have even been submitted to the jury." . . . . On sufficiency review, a reviewing court makes a limited inquiry tailored to ensure that a defendant receives the minimum that due process requires: a "meaningful opportunity to defend" against the charge against him and a jury finding of guilt "beyond a reasonable doubt." . . . . The reviewing court considers only the "legal" question "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*Musacchio v. United States*, 577 U.S. 237, 243 (2016) (internal citations omitted).

In other words, "All that a defendant is entitled to on a sufficiency challenge is for the court to make a 'legal' determination whether the evidence was strong enough to reach a jury at all." *Id*. at 244 (quoting *Jackson*, 443 U.S. at 319).

–4–

In conducting our review, we consider "all evidence in the record of the trial, whether it was admissible or inadmissible." *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013) (citations omitted); *see also Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006) ("[A] reviewing court is permitted to consider all evidence in the trial-court record, whether admissible or inadmissible, when making a legal-sufficiency determination.").

The factfinder is the sole judge of witness credibility and the weight to be given testimony. *See Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the factfinder. *Bohannan v. State*, 546 S.W.3d 166, 178 (Tex. Crim. App. 2017). "When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination." *Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015).

In this case, the indictment alleged that, on or about September 15, 2012[7] through June 30, 2013, during a period that was 30 days or more in duration, Marra committed two or more acts of sexual abuse against G.M. in violation of one or more penal laws, namely, indecency with a child by contact and aggravated sexual assault of a child.[8] In terms of the specific predicate acts alleged in the indictment, the indictment alleged that Marra did, intentionally and knowingly, with the intent to

---

[7] This date was the first day after Marra's seventeenth birthday.

[8] *See* TEX. PENAL CODE §§ 21.11, 22.021.

arouse or gratify the sexual desire of any person, engage in sexual contact by touching part of G.M.'s genitals, by means of Marra's hand, *see* TEX. PENAL CODE § 21.11, and intentionally and knowingly did one or more of the following: cause the penetration of G.M.'s female sexual organ by means of Marra's finger; cause contact between G.M.'s female sexual organ and Marra's mouth; and cause contact between G.M.'s mouth and Marra's male sexual organ. *See* TEX. PENAL CODE § 22.021(a)(1)(B)(i), (iii), (v).

On appeal, Marra characterizes portions of G.M.'s trial testimony about the abuse as "roundabout" and "imprecise" and argues there is "no evidence" to assist the jury in determining whether two or more sexual assaults occurred after he was seventeen and whether the events occurred at an interval separated by thirty days or more. Without citing any record evidence as support on this point, Marra describes four other scenarios which he claims are equally reasonable from the evidence but that would not support a conviction under Penal Code § 21.02, including that Marra assaulted G.M. (1) one time when he was sixteen and one time when he was seventeen; (2) one time when he was sixteen and many times when he was seventeen, but the times when he was seventeen all occurred within a period of less than thirty days; (3) many times when he was sixteen, and one time when he was seventeen; and (4) many times when he was sixteen, and many times when he was seventeen, but the times when he was seventeen all occurred within a period of less than thirty days.

As to Marra's characterization of portions of G.M.'s trial testimony as "roundabout" and "imprecise," we agree with the State that absolute precision is not required, as courts give wide latitude to the testimony of child sexual abuse victims, and a child victim's description of what happened and when it occurred need not be expressed with the same level of sophistication and detail an adult might use. *See Lehman*, 2022 WL 2155061, at *6 (noting this wide latitude and stating, "The child complainant's description of the abuse need not be precise.") (citing *Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.)); *Flanagin*, 2021 WL 2253502, at *6; *Turner v. State*, 573 S.W.3d 455, 459 (Tex. App.—Amarillo 2019, no pet.) ("[T]he uncorroborated testimony of a child sexual abuse victim alone is sufficient to support a conviction for either the offense of continuous sexual abuse or the underlying predicate offenses of indecency with a child or sexual assault[,]" and noting that "[c]ourts give wide latitude to the testimony of child sexual abuse victims" and "a child victim's description of what happened and when it occurred need not be expressed with the same level of sophistication and detail that an adult might use.").

Additionally, in this case, before G.M. testified about the abuse, a forensic interviewer testified about the effect that repeated or chronic abuse can have on a child's memory. The forensic interviewer testified that "when a child is chronically abused, you'll see what we call script memory. It's going to be a lot of statements, like, usually this would happen or normally this would happen[], always this, but

you won't see as many specific incidents." The forensic interviewer contrasted this

with episodic memory and explained:

> A child who's been chronically abused, you would most likely see them use those always, usually words, but also not be able to give you a whole lot of episodic memory. They might be able to tell you about a couple of incidents because something stood out. But if the abuse was the same way every time, you'll not get a whole lot of specific incidents or times.

G.M.—who began first grade in the Fall of 2012, around the same time Marra

turned seventeen—testified that Marra's abuse began before she was in first grade

and went on for a number of years, and she could not remember every single specific

incidence of abuse because it "happened, like, more than I can remember [and] it all

started blending together." She testified the abuse involved the same "pattern"—

touching, licking, and then her doing it to him[9]—and testified:

> Q. [Prosecutor]: [W]ould this happen every time [Marra] came to visit? Most of the time he came to visit? Some of the times? How would you describe that?
>
> A. [G.M.]: I would say most of the times. . . . Some of the times he wasn't home, but I'd say most of the time he was there for like—for enough time from—yeah.
>
> Q. [Prosecutor]: So there were some times that he would come to visit that he would be other places. And it wouldn't happen those times, right?
>
> A. [G.M.]: Mm-hmm.

---

[9] G.M.'s testimony about the pattern of the abuse occurred immediately after she had testified in detail about a specific instance of abuse she remembered most in the bathroom, which involved Marra taking her into the bathroom upstairs, taking off her pants and underwear, taking off his pants and underwear, touching her inside and outside her vagina, licking her vagina with his tongue, and then pushing her head towards his penis and telling her to lick it and put her mouth on it, which she did.

Q. [Prosecutor]: But when he would come to visit and he was there for most of the time, then it would usually happen?

A. [G.M.]: Yeah. And sometimes he would be at home or at my home, and it would happen, and then he would go somewhere else.

When G.M. was asked about the frequency of Marra's visits to her home, she testified, "I think it might have been every week, but it might not have" and agreed "it was regularly." Other witnesses also testified about the frequency of Marra's visits to G.M.'s home between 2012 and 2013. For example, G.M.'s mom and sister both testified Marra visited the home "every other week," with G.M.'s mom explaining that, around 2011, when she and the children's father reconciled and the father moved into the home, Marra did not live permanently in the home with them but came to the home "every other weekend." G.M.'s older sister, L.M., also testified about the every-other-weekend frequency of Marra's visits to the home. While other witnesses indicated that Marra's visits to the home were less frequent, even they indicated that Marra visited the home multiple times.[10] As to the duration of time that Marra's visits to G.M.'s home continued, G.M.'s mom testified Marra stopped coming over for weekend visits after he graduated from high school in 2014.

We are to assess the legal sufficiency of the evidence by the facts of the case as presented to the jury, not by entertaining different facts in our assessment. *See*

---

[10] Marra's biological mother described Marra's visits to G.M.'s home in 2012 and 2013 as being "very few," and when asked if she knew the number could not be "more than five," she agreed. Marra's girlfriend, who began dating Marra in October 2013 during their senior year of high school, testified she remembered him going to visit his dad in their senior year "two or three times."

*McPherson*, 2023 WL 6280118, at *3. Thus, despite the four alternative scenarios Marra describes in his briefing on what the jury might have concluded from the evidence, after examining the record ourselves, we conclude the evidence is legally sufficient to support Marra's conviction. From the evidence described above, a rational jury could conclude from this record that, after he was seventeen, Marra committed two or more acts of sexual abuse against G.M. during a period that was thirty days or more in duration. *See Witcher*, 638 S.W.3d at 710 (concluding, as to the duration component, that the jury could rationally infer from the record evidence that the abuse began by no later than a particular date that was in dispute in that case); *Auld*, 652 S.W.3d at 105 n.6 (stating the question is "not whether the evidence is particularly clear or technically precise" but is instead "whether sufficient evidence supports" the convictions at issue and concluding it did in that case, under the standards discussed in *Witcher*).

We overrule Marra's first issue.

### B.    Alleged Error Under Rule 403

In his second issue, Marra argues the trial court erred in overruling his objection, under rule 403, to evidence of his extraneous acts of abuse of L.M., who is both G.M.'s older sister and Marra's younger half-sister. The State argues Marra failed to preserve error on this issue and that, in any event, the trial court did not abuse its discretion in allowing L.M.'s testimony.

To determine whether Marra preserved error on this issue, we must determine whether he "brought to the trial court's attention the very complaint [he] is now making on appeal." *See Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002) (describing the issue under rule 33.1 as "whether the complaining party on appeal brought to the trial court's attention the very complaint that party is now making on appeal"); TEX. R. APP. P. 33.1(a)(1). We agree with Marra that he did so, considering the specific rule 403 objection and arguments Marra's trial counsel made in the article 38.37 hearing.[11] *Cf. Keller v. State*, 604 S.W.3d 214, 228 (Tex. App.—Dallas 2020, pet. ref'd) (concluding the issue was not preserved for appeal when the appellant made no rule 403 objection in the trial court).

We review a trial court's ruling on the admissibility of evidence for abuse of discretion. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). A trial court abuses its discretion if its ruling falls outside the zone of reasonable disagreement. *Id*. As long as the ruling is in the "zone of reasonable disagreement," we will affirm. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009).

Rule 403 allows a court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair

---

[11] Because the rule 403 issue was raised, considered, and ruled on outside the presence of the jury, Marra was not required to renew his objection when L.M. testified at trial. *See* TEX. R. EVID. 103(b) ("When the court hears a party's objections outside the presence of the jury and rules that evidence is admissible, a party need not renew an objection to preserve a claim of error for appeal.").

–11–

prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403.

In making a rule 403 determination, the trial court must balance (1) the inherent probative value of the evidence and (2) the State's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency to confuse or distract the jury from the main issues, (5) any tendency to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or be needlessly cumulative. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). In practice, these factors may blend together. *Id*. at 642.

We presume the trial court applied the balancing test unless the record affirmatively shows otherwise. *See Rojas v. State,* 986 S.W.2d 241, 250 (Tex. Crim. App. 1998). We also presume the probative value of relevant evidence substantially outweighs the danger of unfair prejudice from admitting the evidence. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999). We will reverse a trial court's rule 403 determination "rarely and only after a clear abuse of discretion." *Id.*

Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007). Rule 403 envisions exclusion of evidence only when there is a "clear disparity between the degree of prejudice of the offered

evidence and its probative value." *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009). In a "he said, she said" case involving sexual assault, rule 403 should be used "sparingly" to exclude relevant, otherwise admissible evidence that might bear on the credibility of the defendant or complainant. *Id*. at 562.

Here, we conclude that the trial court, after balancing the various rule 403 factors, could have reasonably concluded that the probative value of L.M.'s testimony and the State's need for it were not substantially outweighed by prejudice as Marra argues or by the other dangers specified in the rule. Considering the record here, including the lack of third-party eyewitnesses or any physical evidence, the trial court could have reasonably concluded that the first two *Gigliobianco* factors weighed heavily in the State's favor and were not substantially outweighed by the remaining four factors. On the third factor, while extraneous acts involving sexual offenses against children are inherently inflammatory,[12] the potential for an improper decision was lessened by at least two facts, including that the charged offense involving G.M. was either more or comparably egregious to the extraneous events involving L.M., and by the trial court instructing the jury regarding the proper use of the extraneous act evidence. *See Robisheaux v. State*, 483 S.W.3d 205, 220 (Tex. App.—Austin 2016, pet. ref'd) (potential for decision on an improper basis reduced when extraneous acts no more serious than allegations forming basis of indictment);

---

[12] *See Montgomery v. State*, 810 S.W.2d 372, 397 (Tex. Crim. App. 1990) (en banc) ("Both sexually related misconduct and misconduct involving children are inherently inflammatory.").

–13–

*Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) (en banc) (we "generally presume the jury follows the trial court's instructions in the manner presented") (citations omitted). Thus, in light of the record here, the trial court could have reasonably concluded that if the third factor weighed against admission, it did so only slightly.

As to the fourth and fifth factors, we conclude the evidence was unlikely to confuse or distract the jury from the main issues and was unlikely to leave the jury ill-equipped to evaluate its probative force, particularly in light of the court's instructions.[13] Finally, as to the sixth factor, the presentation of the extraneous evidence from L.M. did not take an inordinate amount of time or merely repeat evidence already submitted. *See Kimberlin*, 2019 WL 1292471, at *4 (extraneous events testimony from two witnesses encompassed a total of forty-eight pages of a two-volume record of the guilt-innocence phase).

Thus, we conclude that in balancing the applicable factors, the court could have reasonably concluded that the probative value of L.M.'s extraneous-acts evidence was not substantially outweighed by unfair prejudice or confusion of the

---

[13] The court's charge stated:

> You are instructed that if there is any testimony before you in this case regarding the defendant's having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining the intent of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose.

issues, and because the evidence was thus within the zone of reasonable disagreement, the trial court did not abuse its discretion in overruling Marra's rule 403 objection. *See* TEX. R. EVID. 403; *Gigliobianco*, 210 S.W.3d at 641–42 (listing factors to consider and determining court could have reasonably concluded factors weighed in favor of admitting evidence of defendant's breath test results over his rule 403 objection); *Cornelious*, 2019 WL 1236409, at \*5 (affirming court's admission of extraneous evidence over rule 403 objections where court could reasonably conclude danger of unfair prejudice did not substantially outweigh its probative value).

Based on the record before us, we conclude the trial court did not abuse its discretion in overruling Marra's rule 403 objection and allowing L.M.'s testimony about Marra's extraneous acts of abuse. We overrule Marra's second issue.

## CONCLUSION

We affirm the trial court's judgment.

|  |  |
|---|---|
|  | /Ken Molberg/ |
| 220520f.u05 | KEN MOLBERG |
| Do Not Publish | JUSTICE |
| TEX. R. APP. P. 47.2(b) |  |



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOSEPH MICHAEL MARRA,
Appellant

No. 05-22-00520-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 416-84582-
2018.
Opinion delivered by Justice
Molberg. Justices Pedersen, III and
Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 9th day of October, 2023.